HARRIS and others *v.* ALLEN and others.

*(Circuit Court, N. D. Illinois.   January 15, 1883.)*

PATENT LAW—INFRINGEMENT—SPECIFICATIONS.

>   A patent, like a contract, must be so construed as to effectuate the intention of the parties.   So, where, in the specifications for a patent "bed bottom," the patentee describes the frame-work as "wooden," it was *held* that the intention of the patentee was to claim a "wooden frame" to the exclusion of other material, and that the use of an iron frame for the same purpose is not an infringement.

In Equity.

*Jesse Cox, Jr.,* for complainants.

*H. Harrison,* for defendants.

BLODGETT, J.   This is a bill to restrain the infringement, by defendant, of patent No. 125,250, dated April 2, 1872, issued to Sidney B. Andrews, for an "improvement in spring bed bottoms."   Complainants claim title by mesne assignments from Andrews, and no question is made as to their title.   The bed bottom in question is described by Andrews as a "suspension spiral spring bed bottom," and is said in the specifications to consist of a number of spiral wire springs connected together by links, and suspended within a rectangular frame by means of suspension wires, passing around the bars which form the frame, and attached to the rows of springs and rings next the frame bars.   The patentee says: "My invention consists of five different parts—*First,* the wooden frame; *second,* spiral springs; *third,* rings; *fourth,* hook links; and, *fifth,* suspension wires."   The claim is: "The combination of the several parts of my invention, namely, the springs, B, rings, C, and links, D, with the suspension wire, E, and frame, A, so as to form a suspension bed bottom, substantially as and for the purpose set forth."   The novelty of the invention is not denied, and the only question raised is, does the bed bottom made by defendant, as shown in the proof, infringe the Andrews patent?   The defendants' bed bottom is constructed with an iron frame, made of gas-pipe of about three-fourths of an inch external diameter, and has no rings, but is made up wholly of a congeries of spiral wire springs connected together by hook links, so as to form a web or surface for the mattress to rest upon, and suspension wires which suspend or hold within the frame the fabric made by the springs and hooks.   It appears from the proof that in a portion of the beds made by the defendant the suspension wires simply

pass around the outside of the frame bars or rails, so as to hook onto the top and bottom of the external rows of springs; but in most of the defendants' beds the suspension wires were coiled loosely around the rod or pipe forming the frame, so that the two ends of the suspension wires are spiral springs acting from the central coil around the frame. Defendants claim (1) that they do not infringe, because they do not use a "wooden frame;" (2) that they do not use rings; (3) that they do not use the suspension wires shown by the complainants' patent.

I think there can be no doubt that Andrews has limited himself to the use of a wooden frame as an essential element of his combination. In the language already quoted he says: "My invention consists of five different parts: *First, a wooden frame.*" Again he says:

"A is a *wooden* frame within which my invention is constructed and suspended. This *wooden frame* should be made of strips of hard, stiff wood, about three inches wide and one and one-half inches thick. * * * The suspension wires, E, are held in their proper places on the frame by means of the small wire staples, F, which are sunk into the frame, A, so as to include the suspension wires between the legs or prongs of the staples. This is only intended to prevent the suspension wires from moving laterally on the frame, not to fasten them, as they are intended to have a free perpendicular action at right angles to the frame.'

It is true, there is no reason given by the inventor for using wood instead of any other material for the frame, but he provides that the suspension wire shall be held in place by wire staples which are sunk into the frame, A. The obvious meaning of this direction is that small wire staples are to be driven into this wooden frame as a cheap and easy mode of holding the extension wires laterally in place on the frame, as he evidently assumes that it was necessary to fasten the extension wires so that they could have no lateral motion on the frame; and if an iron frame was contemplated or intended, he would have provided some other mode of fastening these wires, as the expense of drilling holes for the two legs of these staples into the iron rail or rod of the frame would increase the cost of the work to an impracticable extent.

As to the second point made by the defendant, plaintiff insists that the top and bottom of each spring is a "ring," within the meaning and spirit of his invention. It is evident that Andrews thought a practicable bed bottom could be made upon the idea or principle shown in his device, without as many springs as the defendants or complainants now use in practice, and that rings could be used be-

tween the springs to fill up and complete the fabric, taking the place of half or less than half of the springs, so as to make a surface for the mattress to rest upon; but he provides in his specifications that "any number of the springs may be removed, and rings put in their places," and I think the words "any number," as there used, may be held to include all. The suspension wires used by defendants undoubtedly perform the same function as in the complainants' bed, but Andrews evidently intended that his suspension wire should have some motion vertically on the frame, and if the defendants had used only the suspension wires coiled around the bar on the frame, so as to form a spring, I should doubt the identity of the defendants' suspension wires with those of the complainants; but the proof shows that in making part of their bed bottoms, at least, the defendants used the suspension wires in exactly the same form and place and for the same purpose as shown in the complainants' patent, and so far as they used them in that form they undoubtedly infringed this patent.

I do not think it necessary, however, to pass definitely upon the question as to whether these coiled suspension wires used by the defendants are the same as those described as forming part of the complainants' combination, as, in my opinion, Andrews' patent is limited to a "*wooden frame*." That is, I think, he intended to use only a wooden frame, and to claim that only as a part of his combination. This may be a narrow construction of this patent, but it seems to me the only one allowable under the specifications and claims. If Andrews had intended to include a frame of any other material than wood, he, it seems to me, would have said a frame of any material, but preferably of wood, or in some way indicated that he did not intend to limit himself in regard to the material of which his frame was to be made. At least, if he had not intended to restrict himself to a wooden frame, he would not have described a wooden frame so minutely and used the terms so frequently as he has done. The fair inference is that he thought the frame must be of wood in order to fully represent his invention.

It was earnestly urged by complainants' counsel, on the hearing, that to hold this iron frame no infringement, virtually destroys this patent,—a prophecy which may, to some extent, prove true; but a patent, like a contract, must be so construed as to effectuate the intention of the parties, and I must say that it seems palpable to me that Andrews did not intend to claim anything but a wooden frame, and the United States did not intend to grant him anything else.

I will say further, in regard to this patent, that I deem it more than probable that a patent could never have been obtained for this device except for the specification and claim of the *five* parts of the combination, which Andrews said made his invention. So many patents for bed bottoms had been issued long prior to Andrews' application that, to my mind, it is extremely doubtful whether he could have had a patent for this combination of spiral springs, hooks, and suspension wires, and the frame; but when he introduced the further element of rings, which, probably, no one else had thought of or suggested within the knowledge of the patent-office, he was allowed a claim for this invention made up of five elements. This, however, is only my supposition, and is outside the evidence in the case; but it certainly appears, on the face of the patent itself, that Andrews intended to limit his invention to a combination of the five parts which he specially decribes.

This bill is dismissed for want of equity.