AMERICAN ROLL-PAPER CO. et al. v. WESTON.

(Circuit Court of Appeals, Sixth Circuit. November 20, 1893.)

No. 76.

1. PATENTS—ANTICIPATION—PRIOR USE.
Daily use of a roll-paper cutting machine for more than two years in a store employing a considerable number of persons is sufficient public use to constitute anticipation. 51 Fed. 237, affirmed.

2. SAME—PRIOR USE—EVIDENCE.
Anticipation may be established by testimony entirely from recollection of the existence and use of a prior machine, when the witnesses are numerous, disinterested, and unimpeached. Washburn & Moen Manuf'g Co. v. Beat 'Em All Barbed-Wire Co., 12 Sup. Ct. 443, 143 U. S. 275, distinguished.

3. SAME—INVENTION—ROLL-PAPER CUTTERS.
There is no invention in giving additional weight to the knife bar of a roll-paper cutter, so as to obviate the necessity of pressing it down by hand when cutting the paper.

4. SAME—PARTICULAR PATENT.
The Hopking patent, No. 301,596, for a roll-paper holder and cutter is void for anticipation.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

In Equity. Suit by the American Roll-Paper Company and Richard W. Hopking against Edward B. Weston for infringement of a patent. The patent was at first sustained by the court below, (45 Fed. 686,) but on rehearing was declared void for anticipation, and the bill dismissed. 51 Fed. 237. Complainants appeal. Affirmed.

Statement by SEVERENS, District Judge:

This case was brought here from the circuit court for the southern district of Ohio, western division, upon an appeal by complainants in that court from the decree there rendered upon the pleadings and proofs, dismissing their bill. The bill was filed for the purpose of restraining the infringement by the defendant of rights alleged to be secured by letters patent No. 301,596, bearing date February 8, 1884, issued to Hopking, under whom the other complainant claims by assignment, for the invention of an improved paper holder and cutter, and for profits and damages.

The defendant, answering, denied that Hopking was the first inventor of the alleged improvement, and averred that it had been previously known and used in this country, and had been so publicly used for more than two years prior to the application for this patent; and the answer particularly set forth certain patents therein enumerated, and other devices not patented, but alleged to have been in prior public use, which it was claimed anticipated the supposed invention of Hopking. The answer was several times amended by leave of the court, and by those amendments it was particularly specified that the Hopking invention had been known to and publicly used by various other parties, among them one Martin N. Nixon, at Richmond, Ind., and O. J. Livermore, at Holyoke, Mass.

Prior to the amendments specifying the public use of the supposed invention by Nixon and Livermore, the case was brought to hearing on the pleadings and proofs as they then stood, which included many of the patents relied on by the defendants, and the court below decreed for the complainants, sustaining their patent. Subsequently, upon petition showing grounds deemed sufficient, that decree was vacated, the pleadings amended, and evidence regarding the previous use by Nixon, Livermore, and others received. Upon consideration of the evidence produced in support of the suggestion of previous use of the complainants' devices by Nixon and Livermore, the court held that

it was sufficiently proved in each case, and accordingly held, contrary to its original conclusion, that the patent in question was void, and dismissed the bill.

Geo. H. Knight, (Geo. W. Lathrop and John W. Noble, of counsel,) for appellants.

Stem & Allen, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, (after stating the facts.)   This case has been argued here as if it were to be assumed that the original decree was right upon the case as it then appeared, and counsel for both parties have confined their briefs and arguments to the sole question whether the court below was right in holding the complainants' invention to have been anticipated by the public use of the Nixon and Livermore machines.   We conceive that in this case we may properly limit ourselves to the same scope of inquiry.   We therefore do not decide what the result should have been upon the case as it stood before the new matter was added, but confine our attention to the particular subjects which have been argued.

The paper holder and cutter for which the patent in question was granted was designed for the purpose of conveniently supporting and paying off paper put up in rolls, and cutting off strips of required length as it should be unrolled.   The structure consisted of the following elements:   A hanger or bracket, from which is suspended a yoke, composed of a straight bar a little longer than the roll of paper, having arms turned at right angles to it, the arms having flanges projecting from their outer ends at right angles to them, the flanges entering the opening in the center of the roll of paper at each end; and a knife, having a length about the width of the roll, or a little more, which is kept pressed against the anterior side of the roll by a knife yoke, which is attached by its extending arms to the knife, and along its upper bar to the bracket parallel therewith, but to the latter not rigidly, being so adjusted as to roll slightly thereon, and being also provided with springs attached thereto at one end and around it, and so applied at the other to the bracket as to produce a continual pressure by the yoke and knife upon the side of the roll towards the operator. The paper having been suspended upon the first-mentioned yoke, the knife, which is held flat against the side, operates as a brake, preventing the paper from unrolling except as it is drawn out by the operator.   The free end of the paper is drawn out under the knife, and the paper unrolled until a sufficient length is obtained, when the strip is drawn up and a little sidewise against the edge of the knife, and cut off.

Four of the claims thereon were for combinations of these parts, or some of them.   The other two were for the knife and the knife yoke, respectively.   The claims upon which the complainants rely are the second and fifth.   They are as follows:

"(2) The combination in a roll-paper holder of a hanger or bracket and a spring knife, substantially as set forth."

"(5) In a roll-paper holder, a knife carrier or yoke, substantially as described, provided with means for keeping the knife to its work."

The paper holder and cutter of the defendant, which is alleged to be an infringement, instead of supporting the roll of paper on a yoke, suspends it upon a shaft running through its center, and projecting beyond the roll somewhat at each end, so as to form a journal which rests in the lower end of a slot cut down into the sides of perpendicular uprights planted on and secured to a table, and held in place by a cap across the top.    Arms projecting from the sides of the uprights are fastened to the outer ends of a weighted knife running parallel with the roll and resting upon the anterior side of it, and which knife, with its added weight, serves both as a brake and a cutter.    The paper is drawn under the knife and cut off as desired.    The complainants insist that the pressure of the weight added to the knife is an equivalent to that of their spring; and this, we think, must be admitted.

Coming now to the question we are to decide, our attention will be given, in the first place, to the use claimed to have been publicly made of the subject patented to Hopking in the Livermore machine. A paper holder and cutter was, according to the testimony of several witnesses, constructed as early as 1878 by O. J. Livermore, who was at that time an employe of Clark, Sawyer & Co., at Worcester, Mass., a firm engaged in general merchandise there.    That machine, according to the description, was in all respects like that of defendant, except that the combined brake and knife, instead of being set off by arms so as to press upon the side of the paper roll, was let down upon the top of the roll through the same slots in the standards in which the journals of the shaft supporting the paper were contained, and except, probably, that the weight of the brake and knife was less in the Livermore machine.    The manner of its use was by drawing the loose end of the paper under the brake and knife until a sufficient quantity was obtained, whereupon the paper was drawn upwards and sidewise against the knife, cutting it off.    This machine, after having been thus used for several years, became dilapidated, and went out of use.

Livermore testifies that, conceiving some such a thing would be convenient, he devised and constructed this machine there used, and set it up in the store of his employers, where it was in constant use in their business for the purpose of holding and cutting off the paper employed in doing up parcels.    He states that this use of the machine was continued for more than two years prior to his leaving employment in that store, which was in 1880.    Mr. Sawyer, who was a member of that firm, testifies that he remembers the machine well; that he used it himself; and that, according to his remembrance, it was substantially as above described, and was in use in the store seven or eight years.    Mr. Richardson, another member of the firm, testifies that he recollects the machine, and corroborates the description of it, and its continuous use in their store for several years; and he describes the manner in which the paper was rolled out and stripped off against the cutting bar.    Mr. Marsh states that he was an employe of the firm, remembers the machine, and also corrob-

orates the description given by the other witnesses; states that it was in constant and daily use in the store during the time he was there, from July 24, 1882, to March 8, 1884, and that the paper was taken out and torn off in the manner already described. Mr. Sanderson, another employe from 1875 to 1881, testifies that such a machine was in constant use there for at least two years before the last-mentioned year. Another witness, Mr. Fletcher, who was also an employe of the firm from 1876 to 1880, testifies that such a machine was used there daily for holding and tearing off the paper in the manner described; that he returned there some four years afterwards, and found the machine still in use.

Judging from the number of persons employed about the business of this firm, and other indications from the testimony, it would appear that the use of the machine was sufficiently public to bring the case within the consequences of the statutory provision in that regard. The machine to which this testimony relates is not produced, and is said to be no longer in existence.

We are fully sensible of the just criticisms which were made upon this class of testimony by the supreme court in the case of Washburn & Moen Manuf'g Co. v. Beat 'Em All Barbed-Wire Co., 143 U. S. 275, 12 Sup. Ct. 443, and many times repeated by that and other courts in dealing with such cases; but it is impossible to resist this mass of testimony, coming as it does from witnesses who are unimpeached, and, possibly with one exception, wholly disinterested. Besides all this, the existence and long-continued public use of the Livermore machine is proven by the testimony of two witnesses produced by the complainant, Stevenson and Ball, the former an employe and the latter a member of the firm of Clark, Sawyer & Co. It is true their testimony tends to show that the knife bar was too light to be efficient, and Ball, in particular, states that it was necessary to hold it down upon the roll while the paper was being cut off; and this latter statement receives some, though slight, corroboration from the defendant's witnesses, though the preponderance of the evidence is that the knife bar was sufficient without additional weight, when used by those familiar with the machine.

However this may have been, the addition of weight to the crossbar, for the purpose of making it more efficient, was so obvious as not to require the faculty of invention. Anybody who saw the need would immediately see the means of supplying it, and would adopt it if it was deemed worth the while. By that addition, and the use of more skillful mechanism, the undoubtedly useful machines of these parties have been produced. But the principle in both is the same as in the Livermore machine, and the defendant's is substantially identical with it, the only difference being in the increased weight given to the cutting bar.

For these reasons we think the court below was right in holding that the second and fifth claims of the Hopking patent were anticipated by the prior public use of the Livermore machine. The evidence in regard to the alleged prior public use of the Nixon machine is less satisfactory, but we do not find it necessary to determine whether that is established, in view of our conclusions upon the evidence of

the prior public use of the machine made by Livermore; that being sufficient to support the decree appealed from. Fruit-Jar Co. v. Wright, 94 U. S. 92; Egbert v. Lippmann, 104 U. S. 333, 336; Andrews v. Hovey, 124 U. S. 694, 701, 8 Sup. Ct. 676; Jones v. Barker, 11 Fed. 597.

The decree in the court below must be affirmed, with costs.