SEABURY et al. v. JOHNSON et al.

(Circuit Court, D. New Jersey. September 18, 1896.)

1. PATENTS—LIMITATION OF CLAIMS.
    Courts are bound by the language chosen by the inventor in framing his claims, and they have neither the right nor the power to enlarge a patent beyond the scope of the claims, even though the patentee may have been entitled to something more than the words he has chosen to use will include.

2. SAME.
    In a patent for an improvement in disinfectants, consisting of a particular form of sulphur candle, the patentee described a certain band as "preferably of metal," but in his claim mentioned only "a surrounding band of metal." Held, that the patent was limited to a candle having the band actually of metal, and was not infringed by one having a paper band so treated as to be incombustible, thereby accomplishing the same end.

3. SAME—IMPROVEMENT IN DISINFECTANTS.
    The Shaw patent, No. 390,314, for an improvement in disinfectants, consisting of a particular form of sulphur candle, construed, and held not infringed.

This was a suit in equity by Seabury & Johnson against Johnson & Johnson for alleged infringement of letters patent No. 390,314, issued October 2, 1888, to Charles H. Shaw, for an improvement in disinfectants.

Edwin H. Brown and James C. Chapin, for complainants.
C. E. Mitchell and H. B. Brownell, for defendants.

GREEN, District Judge. The complainants have brought this suit to restrain the defendants from infringing letters patent of the United States granted to one Charles H. Shaw, for a "new and useful improvement in disinfectants." The letters patent are dated October 2, 1888, and are numbered 390,314. Practically, the invention is for a particular form of a "sulphur candle." In describing his invention, Mr. Shaw, in the specifications, referring to the accompanying diagram or drawing, says:

"The candle in this example of my improvement has a body, a, of cylindric form, provided on the upper side, at about the center, with a nipple or projection, a'. Around the body, a, extends a band, b, which is preferably made of metal, and extends slightly above the top of said body, in order that it may prevent the flowing over of any liquified sulphur upon any article on which the candle may be placed and burned. This band may simply be retained by friction in place around the body, or it may be secured in any other suitable manner. There may be a plate of metal beneath the bottom of the body, a, of the candle, if desirable, and, in case such a plate should be employed, it might be secured to the lower edge of the band, b. The candle in this example of my improvement is shown as being of large diameter compared with

its length or height, and it is desirable to make it in this way in order that a large surface of the sulphur shall be exposed for combustion. I employ a wick or wicking consisting of threads or fibers of combustible material, distributed throughout the entire body, a, of the candle, or the entire upper portion of the body, as well as the nipple or projection, a'. I have represented such thread or fiber by short lines in Fig. 2, and marked such lines with the letter 'c.' Obviously, a candle embodying my improvement may be made in other shapes; as, for instance, square or approximately square, or of other polygonal contour."

The advantages resulting from this improvement are summed up by the inventor in these words:

"A candle embodying my improvement will burn slowly, and without entailing any serious danger of conflagration."

Two claims are made, but only the first is involved in this suit. It is as follows:

"(1) A sulphur candle, provided with a surrounding band of metal, projecting slightly above the upper side or end of the main portion or body of said candle, substantially as described."

It is insisted that the infringement of this patent by the defendants has been clearly proved. The "candle" manufactured by the complainants, and protected by the letters patent referred to, may be described as a mass of sulphur, preferably cylindrical in shape, having a woven or twisted wicking, about which the sulphur rises into a star-shaped nipple, surrounded by a metal band, the edge of which projects above the mass of the sulphur, as distinguished from the nipple, sufficiently to prevent the overflow of the sulphur when fused in the process of burning. The device of the defendants, which is alleged to be infringing, is also a mass of sulphur having at the center a circular wick, which is placed in a circular groove sunken in the body of the sulphur, the bottom of which is distinctly lower than the surrounding sides of the box in which the candle is fixed; the box, itself, however, not being of metal, but made of paper.

Does the manufacture of the defendants infringe that of the complainants? To answer this question, it is necessary to analyze the claim of the patent now in litigation. It contains four distinct features or limitations: (1) A sulphur candle, (2) having a projecting central nipple, (3) provided with a surrounding metal band, (4) having an edge projecting above the surface of the inclosed candle. Upon an examination of the defendants' device, certainly some of these features are clearly wanting. Of course, the body of the candle—the mass of sulphur—necessarily appears; but there is in the defendants' candle neither a nipple nor a metal band, nor does there seem to be a projecting edge to the surrounding support or holder of the sulphur. In all these respects it differs from the manufactured article of the complainants; and if these differences, or either of them, be radical, it would follow that there is no infringement of the complainants' device.

It will be necessary to consider only one of these points of difference, as it appears in the construction of the candles in question; and that relates to the character and nature of the band surrounding the mass of sulphur forming the candle of the patent. In the one case it is to be of metal; in the other it is of paper. Now, the contention of the complainants is that, the paper being admittedly chemically treated so as to be rendered incombustible, it thereby becomes an equivalent for metal, and its use to accomplish the same purpose as the metal is a clear infringement. But the claim is not for an "incombustible band," but for a metal band; and its purpose is obvious. Sulphur, when it is heated to fusion or burning point, is at a tempera-

ture of about 238° F., and in such state would be very apt to set fire to any combustible material with which it might come in contact. To prevent its flowing, to confine it within safe limits, to prevent its communicating fire to combustible materials, the casing, projecting sufficiently above the fused mass of ignited sulphur, is provided. In the specification this band is said to be "preferably made of metal." Had the claim made by the inventor been couched in similar words or phrases, the contention of the complainants would have had great force. Possibly, then it might have been convincingly argued that any projecting band which would have retained the fused sulphur within itself, whether metallic or of other material, would have been within the claim of this patent. But the inventor, for reasons doubtless satisfactory to himself, deliberately limited his claim to a "metallic band," although it is quite clear from the words of the specification that he was perfectly well aware that bands of other material might suffice. Believing that metal bands were "preferable," he deliberately chose them for this monopoly, and chose them only. His act in so doing was nothing more or less than a declaration that he abandoned to the public the right to use bands which were nonmetallic. The law of patents requires that the patentee shall particularly specify and point out the part, the improvement, or the combination which he claims as his invention or discovery. Courts are bound by the language chosen by the inventor; and they have neither the right nor the power to enlarge a patent beyond the scope of its claim, as allowed by the commissioner of patents. "When the terms of a claim in a patent are clear and distinct, the patentee in a suit for infringement is bound by it." He is absolutely barred from attempting to show that his invention or discovery is larger and broader than the terms of the claim. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274; Railroad Co. v. Mellon, 104 U. S. 112; White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72; Stirling Co. v. Pierpont Boiler Co., 72 Fed. 780.

The principle which governs in cases of this nature is most tersely stated by the supreme court in McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 77, in these words:

"While the patentee may have been unfortunate in the language he has chosen to express his actual invention, and may have been entitled to a broader claim, we are not at liberty, without running counter to the entire current of authority in this court, to construe such claims to include more than their language fairly imports. Nothing is better settled in the law of patents than that the patentee may claim the whole or only a part of his invention, and that, if he only describe and claim a part, he is presumed to have abandoned the residue to the public. The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery' is not only to secure to him all to which he is entitled, but to appraise the public of what is still open to them. The claim is the measure of his right to relief, and while the specification may be referred to, to limit the claim, it can never be made available to expand it."

Applying this rule to the case under consideration, it seems clear that the patentee has expressly limited his invention to that character of device in which a "metal band" is a necessary component

part. Admittedly, the defendants do not make use in their device of any band of a metallic character; hence it follows that they do not infringe. The bill must be dismissed.