SCHREIBER & CONCHAR MFG. CO. v. ADAMS CO. et al.

(Circuit Court of Appeals, Eighth Circuit. September 15, 1902.)

No. 1,674.

1. PATENTS—CONSTRUCTION OF CLAIMS—LIMITATION BY LANGUAGE USED.
    Where the language of the claims of a patent is clear and unambiguous, it cannot be enlarged ,by the courts, although it may not be broad enough to cover the actual invention of the patentee.

2. SAME—INFRINGEMENT—STOVE DAMPERS.
    The Farwell patent, No. 493,548, for an adjustable stove damper, was not anticipated and is valid, but is limited, not only by the prior art, but by the specific language of its claims, to a damper with a rod having two grooves in it, one on each side thereof, extending nearly its entire length, and is not infringed by the damper of the Ohnemus & Sanner patent, No. 623,417, in which the rod is not grooved.

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

For opinion below, see 111 Fed. 182.

Melville Church (Joseph B. Church, on the brief) for appellant.
M. M. Cady and L. L. Bond, for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge. The appellees (complainants below), owners of letters patent No. 493,548, issued to Fay O. Farwell March 14, 1893, for stove damper, by their bill charge the appellant (defendant below) with infringement of said patent, in the manufacture and sale by the defendant of stove dampers, and pray for an injunction, accounting of profits, and damages. The answer attacks the validity of the patent, and alleges that Farwell was not the inventor of the device described in his patent, and that before his alleged invention the same device had been known to and used by many specified persons and companies, and was described and anticipated in many designated prior patents. Infringement was also denied. Proofs were taken by both sides, including many of the earlier patents pleaded in the answer. On the hearing the charge of infringement was confined to the second claim of the Farwell patent. Decree was entered adjudging that the Farwell patent was valid, and that defendant had infringed the second claim thereof, and awarding an injunction and accounting of profits, with costs, from which decree this appeal is taken.

The evidence shows that the business of making adjustable stove dampers, to be used in repairing stoves and replacing disabled dampers, was so considerable that many devices were invented and in use, some of them being patented; the object being to provide a damper which could readily, and without the exercise of special skill, be fitted and adjusted to any ordinary cooking stove. Without following the various changes and improvements in such dampers, the state of the art at the time of Farwell's alleged invention may perhaps be sufficiently shown by considering patent No. 470,439, for stove damper, issued to Emery D. Nellis March 8, 1892. In his specifications he says:

"I construct my improved damper in two separate parts,—the damper plate, A, and the operating rod, B (see Fig. 5), with the means of securing them together. The damper plate, A, is, of course, constructed in outline of a shape corresponding to the flue space in which it is intended to operate. In one edge of the plate, A, are formed the oppositely projecting curved lips, C and D, which are adapted to embrace the body of the rod, B; the intermediate space between them corresponding to the size and shape of the body of the rod, B. To prevent the plate, A, from turning on the rod, B, about the axis of the same, when the damper is assembled, as shown in Fig. 4, I form a longitudinal tongue, E (see Figs. 5 and 7), in the concave surface of the lips, C, and a longitudinal groove, F, in one side of the rod, B, adapted to engage with each other and rotate the plate, A, when the rod, B, is rotated by the handle, G, on the end of the rod, B, about the axis of the rod as the center of rotation. The aforesaid construction * * * enables the damper rod or journal rod to be readily inserted endwise through the framing plates and damper, which facilitates the insertion of the damper when the stove is set up or in case of repairs. * * * The damper plate, A, is placed in the flue space, through which passes the current it is intended to regulate by the same; then the rod, B, is thrust through the groove formed in the edge of the plate, A, by the lips, C and D, passing it through the perforations formed therefor in the framing plates, L, of the stove, letting the groove, F, engage the tongue, E, until the perforation, H, coincides with the perforation, I, when the pin, K, is inserted therein, locking the parts, A and B, together."

In this Nellis device, the perforation, H, just mentioned, is through the rod, and the perforation, I, through one of the lips of the plates; and the split key, K, is passed through both when opposite each other, to prevent the plate from slipping longitudinally on the rod. This is criticised as requiring the rod to be perforated after the location of the damper plate is ascertained, or the making of the rod with many perforations, and with liability then to vary from the exact place desired. But the substitution of a set screw or simple wedge would occur to any mechanic as a complete remedy for any such difficulty. So the longitudinal tongue, E, in the concave surface of the lips on one side to engage the single longitudinal groove in the rod is criticised as permitting the rod to be inserted from only one side of the stove. But if this was found objectionable the obvious remedy would occur to any mechanic to make that tongue in the central part of the cavity between the lugs or lips, and just opposite the edge of the plate, when the rod could be inserted equally well from either side of the stove. Neither of these slight changes would involve any invention.

In the Farwell patent the device is described in the specifications as follows:

"A is the blade of the damper, provided on its opposite lower edge with three or more lugs, B, B, which curve partly around the upper portion of the rod, C, and engage with the flutes or corrugations, D and E, in said handle, C, as shown more fully in Fig. 2. This rod, C, has one end of the same bent at an obtuse angle, to form a convenient handle for operating the same. The rod, C, is of peculiar form, resembling an acute triangle slightly rounded at the angles, as shown in Fig. 2, with two flutes or corrugations, D and E, upon the sides opposite to each other, extending nearly the entire length of the rod, C, with which the lugs, B, B, engage, in such a manner that when the rod is inserted in the blade, A, and the lugs, B, B, are in the flutes, D and E, the width of the rod with the lugs will still be narrow,— slightly narrower than the base of the rod,—and will not prevent the damper from lying flat on the oven when turned down, and will also allow the

rod to rest on the oven when the blade is turned and in use; thus preventing any air from passing under the rod, as is the case with those dampers where the lugs, B, B, clasp the whole of the rod. Through the blade, A, I pass the bolt, F, which prevents the blade from sliding on the rod when it is in position, and allows the blade to be set in any position on the rod. As these flutes or corrugations, D and E, run nearly the entire length of the rod, C, I am enabled to set the blade at any position along the handle to suit stoves requiring handles of varied lengths."

Peculiar advantages are asserted from the ovate form of the rod, the smaller part of which above the grooves or flutes is grasped by the lugs loosely, so that the plate, when fastened by the bolt, may be made to stand inward from the center of the rod, and come flat on the oven plate when turned down, while the larger lower part of the rod will, when the plate is raised, close the space below the plate.

Claim 2 of the Farwell patent, which the defendant is charged with infringing, claims:

"A stove damper comprising a rod having two grooves in it, one on each side thereof extending nearly its entire length, and a blade formed with lugs on its opposite sides, said lugs being fitted loosely in the grooves or flutes, and adjustable with the blade in said grooves to any point desired so as to adapt the dampers to stoves requiring different lengths of handles, and a screw for confining the blade to its adjusted position, substantially as described."

This Farwell patent, like that to Nellis, is granted for its peculiar combination of the constituent parts of the device; such parts, separately considered, being regarded as old, or at least as unpatented. The devices described in these two patents are in many respects similar. In each a rod or stem is used which passes through the side of the frame of the stove, and through the opening fitted for it by the shape of the lugs or lips of the plate or blade of the damper. In both the plate may be adjusted on the rod and brought opposite the flue intended to be closed, and there secured from slipping longitudinally on the rod by being there fastened, whether by the key named by Nellis, or the screw named by Farwell, or by a wedge, or in any other equivalent manner. So far, at least, the devices are substantially alike, and the Farwell combination anticipated by that of Nellis. The difference in the two combinations arises entirely from the differences in the form and in the grooving or fluting of the rods, and the incidental variances in the plate lugs, in matching the rods. These have been already described. The advantages claimed for the Farwell combination, resulting from the shape of its rod, are that the rod may be inserted from either side of the stove and damper, and that its formation closes more entirely the space between the damper blade and the oven than did the surrounding lugs of the earlier device. The improvement over previous combinations is doubtless sufficient to sustain the validity of the Farwell patent.

The next and most serious question is, does the defendant's device infringe this Farwell patent? Defendant's damper is made under a patent, No. 623,417, issued to Anton Ohnemus and Henry Sanner April 18, 1899, and its construction is described in the specifications of that patent:

"The main portion of the stem is of oval shape in transverse section, and has a broad back, 3, sloping sides, 4, and a narrow front, 5, extending the

greater portion of its length. One end of the stem is turned to form a handle, 6. The back of the blade fits against the back of the stem, and is held thereto by ears or lugs, 7, on the blade, and by ears or lugs, 8, on a plate, 9, that fits in a recess, 10, that is formed in the central part of the blade. The plate is held to the blade by means of a bolt, 11, and its inner edge is notched at 12 to receive one of the ears, 7, on the blade. The upper and the end walls of the recess, 10, slope inwardly from the outer surface of the blade, so that when the bolt, 11, is tightened to cause the ears, 7 and 8, to engage the stem, the inner edge of the plate will be pressed against the back of the stem, and a tight, close fit will be effected between the walls of the recess and the plate; the result being a practically airtight connection between the blade and the stem. The ears are formed to fit the sloping sides of the stem, and the blade is thus movably held to the stem, and can be adjusted thereon by loosening the bolt, as will be readily understood. By forming the stem without grooves, and by clamping the blade firmly thereto throughout the entire length of the latter, the stem is not liable to become warped by excessive heat."

That defendant's device performs the same functions as does the Farwell device, and in substantially the same way, is apparent; and if the Farwell patent was for a pioneer invention, which for the first time assembled the parts so as to permit the blade of the damper to be moved, adjusted, and fastened to any place along the rod, the patent might be entitled to a broad and liberal application of the doctrine of equivalents, and a persuasive argument presented that defendant had appropriated the idea of the patent, with a mere change in the form of the parts. But this device was an old one at the time of Farwell's alleged invention, which only changed the previous devices by substituting his peculiar and carefully described form of rod for rods previously used, and by providing that such rod should be fitted loosely in the engagement of its grooves by the lugs of the blade. The meaning of the word "groove" or the word "flute" is unmistakable and perfectly clear. Either of these words conveys to the mind the idea of a noticeable depression of some length in a surface. It is absurd to imagine a groove, flute, or furrow in a perfectly smooth, even surface. The defendant does not use Farwell's invention. Its rod has no groove, and it is not fitted loosely in the lugs, so that the blade can be rolled over slightly, and then held in the desired place by the impact or pressure of a screw, but, when adjusted to its place on the rod, the lugs on their inner surface embrace and clasp the rod tightly.

It may be that Farwell's invention would have entitled him to have made a broader claim, which would have covered any form of rod which could be passed through the lugs of the damper plate equally well from either side of the stove, but his patent makes no such broad claim. It is in this respect like the patent under consideration in Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344, where the claim was for:

"First, the construction of the lower chords of truss bridges of series of wide and thin drilled eye-bars, C, C, applied on edge between the ribs, S, S, on the bottoms of the posts, and connected by pins, P, P, supported in the diagonal tension braces, D and E, all substantially as herein described."

It was held that the use of round or cylindrical bars flattened and drilled at the eye, in the lower chords of truss bridges, was not an infringement of this patent, although the round bars performed the

same functions as the wide and thin bars, and in the same way. The court said:

"Words cannot show more plainly that the claim of the inventor does not extend to any other eye-bars or chords than such as are wide and thin, and applied on edge. As those constructed by the defendant are cylindrical in form, only flattened at the eye for insertion between the ribs or projections, it is plain that no infringement of this claim of the patent has been committed. * * * When a claim is so explicit, courts cannot alter or enlarge it. If the patentees have not claimed the whole of their invention, and the omission has been the result of inadvertence, they should have sought to correct the error by a surrender of their patent and an application for a re-issue. They cannot expect the courts to wade through the history of the art, and spell out what they might have claimed, but have not claimed. Since the act of 1836, the patent laws require that an applicant for a patent shall not only, by a specification in writing, fully explain his invention, but he 'shall particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery.' * * * As patents are procured ex parte, the public is not bound by them, but the patentees are. And the latter cannot show that their invention is broader than the terms of their claim."

In McClain v. Ortmayer, 141 U. S. 419, 423, 12 Sup. Ct. 76, 77, 35 L. Ed. 800, the court says:

"While the patentee may have been unfortunate in the language he has chosen to express his actual invention, and may have been entitled to a broader claim, we are not at liberty, without running counter to the entire current of authority in this court, to construe such claims to include more than their language fairly imports. Nothing is better settled in the law of patents than that the patentee may claim the whole or only a part of his invention, and that, if he only describe and claim a part, he is presumed to have abandoned the residue to the public." Citing Railroad Co. v. Mellon. 104 U. S. 112, 26 L. Ed. 639; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Burns v. Meyer, 100 U. S. 671. 25 L. Ed. 738; Sutter v. Robinson, 119 U. S. 530, 7 Sup. Ct. 376, 30 L. Ed. 492.

In Seabury v. Johnson (C. C.) 76 Fed. 456, the claim was:

"(1) A sulphur candle, provided with a surrounding band of metal, projecting slightly above the upper side or end of the main portion or body of the said candle, substantially as described."

The defendant's device was similar, except that, instead of a metal band, he used a band made of paper chemically treated so as to be rendered incombustible. Complainant claimed that the paper band so prepared became an equivalent for the metal band, and was an infringement. But the court held that, while the invention might have warranted the patentee in claiming a band of incombustible material, he had not done so, but had limited his claim to a metal band. The court said:

"His act in so doing was nothing more nor less than a declaration that he abandoned to the public the right to use bands which were nonmetallic. The law of patents requires that the patentee shall particularly specify and point out the part, the improvement, or the combination which he claims as his invention or discovery. Courts are bound by the language chosen by the inventor, and they have neither the right nor the power to enlarge a patent beyond the scope of its claim, as allowed by the commissioner of patents. 'When the terms of a claim in a patent are clear and distinct, the patentee, in a suit for infringement, is bound by it.' He is absolutely barred from attempting to show that his invention or discovery is larger and broader than the terms of the claim. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Railroad Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639;

White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed 303; Stirling Co. v. Pierpoint Boiler Co. (C. C.) 72 Fed. 780."

The language employed in the Farwell patent, as well in the specifications as in each of the claims, makes the rod of the peculiar form described, with two grooves,—one on each of its opposite sides and extending nearly its entire length,—an important and essential part or element of his combination. The defendant does not use a rod with grooves, and therefore does not infringe the Farwell patent.

The decree appealed from is therefore reversed, with costs, and with directions to dismiss complainants' bill.