COLUMBUS CHAIN CO. v. STANDARD CHAIN CO.

(Circuit Court of Appeals, Sixth Circuit. October 20, 1906.)

No. 1,532.

1. PATENTS—ANTICIPATION BY FOREIGN PATENT—BURDEN OF PROOF.

A patent will not be invalidated for anticipation by a foreign patent of prior date, if the invention is shown to have been made by the American patentee before such date; but, where anticipation is otherwise clear,

the burden rests upon him to establish such priority beyond a reasonable doubt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 64.]

2. SAME—MACHINE FOR DIMENSIONING CHAIN-LINKS.

The Carroll patent, No. 620,826, for a swaging device for regulating the dimensions of chain-links, is void for anticipation by the Swiss patent to Goerke, No. 9,592, which covers a device substantially the same in all its parts and intended to accomplish the same result, but also, in addition, for use in welding the links.

Appeal from the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

See 145 Fed. 186.

C. C. Shepherd, for appellant.
Melville Church, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This is an appeal from a decree dismissing a bill filed to enjoin the infringement of letters patent No. 620,826, granted to Daniel Carroll, March 14, 1899, and assigned to appellant, complainant below, April 19, 1900. The answer put in issue both the validity of the patent and its infringement.

The patent is for a device for imparting uniform dimensions to chain-links, i. e., internally. Many chains, such, for instance, as pulley and crane chains which run over toothed wheels or have to fit into pockets or depressions on the face of wheels, require that the links thereof be internally of exactly equal lengths. It is to secure this result that the device covered by the patent is intended. It is a punch with two distinguishing features. One is a slightly tapering head, adapted to enter and fill the ends of a chain-link; the other, a channel in one of its faces to permit free movement therein of one arm of the adjoining link. It is thus set forth in claim 1 of the patent, which is the claim thereof alleged to have been infringed:

"In a device for regulating the dimensions of chain-links, a punch having a slightly tapering head, adapted to enter and fill the ends of a chain-link, said punch head having a channel in one of its faces to permit the free movement therein of one arm of an adjoining link substantially as and for the purpose specified."

*Fig. 5*

A detailed view or perspective of the upper portion of the punch is shown by figure 5 of the drawings, which is as follows:

A similar view of a slightly modified form of the punch, the modification consisting in a substantially bifurcated end portion thereof, is shown by figure 6 of the drawings, which is as follows:

*Fig.6*

The operation of the device consists in forcing the chain-links previously formed down over the punch, and then removing them therefrom, or it may consist in the reverse of this, i. e., in forcing the punch into the chain-links and then removing it therefrom. The result of the operation of the device in either way is that the internal dimensions of all the links in a chain are made identical and uniform. To secure this operation, the drawings and specification of the patent contemplate that the device shall be used in connection with an ordinary foot, hand, or power press. They set forth an arrangement of the press so as to secure the operation of the device in the first of the two ways stated. Figure 1 of the drawings is a side elevation of the parts of the press, which come in contact with the device; the device in place and the chain being formed. It is as follows:

*Fig.1*

3 is the punch; 1 the base block to which it is attached; 12 the slide arm of the press which forces the previously formed chain-link down over the punch; and 6 the stripper plate, the elevation of which removes the chain-link from the punch. In practice it seems that the device is operated in this way rather than in the reverse way. It accomplishes the intended result successfully. The evidence discloses several ways of accomplishing such result prior to its use, but they were crude, and, as

compared with them, it saves much labor. It is therefore a useful and valuable device.

The defense of noninfringement was based upon the fact that appellee's punch, instead of having a channel in one of its faces to permit free movement therein of the adjoining link, is separated into two parts, with a central space between them, in which one arm of the adjoining link can have such movement. It is urged that the patentee, Carroll, limited his device to a punch having a channel in one of its faces, and, as appellee's punch does not have such channel, there has been no infringement. The following authorities are cited in support of this position: Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Burns v. Meyer, 100 U. S. 671, 25 L. Ed. 738; Railway Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639; Sutter v. Robinson, 119 U. S. 530, 7 Sup. Ct. 376, 30 L. Ed. 492; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Cimiotti Co. v. American Fur Refining Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100; Harriss v. Allen (C. C.) 15 Fed. 106; Western & Wells Co. v. Rosenstock (C. C.) 30 Fed. 67; Kinzel v. Luttrall Brick Co. et al., 67 Fed. 926, 15 C. C. A. 82; Seabury v. Johnson (C. C.) 76 Fed. 456; Schrieber & Conchar Mfg. Co. v. Adams, 117 Fed. 830, 54 C. C. A. 128; Hale v. World Mfg. Co., 127 Fed. 964, 62 C. C. A. 596.

On the other hand, it is urged that the space in appellee's punch is nothing more than a continuation of the channel in appellant's punch, and differs from its modified form, as shown in figure 6, in degree only. And see the decision of this court in the case of Standard Caster Wheel Co. v. Caster Locket Co., 113 Fed. 162, 168, 169, 51 C. C. A. 109. We do not find it necessary to dispose of the question thus raised, inasmuch as we think that the defense of invalidity of the patent has been made out, and it was on this ground that the lower court dismissed the bill.

The patent is invalid because it was anticipated. To establish anticipation a number of prior United States patents were introduced in evidence by appellee, and its expert, after a consideration thereof, gave it as his opinion that the subject-matter defined by claim 1 of the patent in suit was disclosed in its entirety therein. To the same end a Swiss patent, No. 9,592, issued to Heinrich Goerke, December 27, 1894, was so introduced. It is this patent which the lower court held invalidated the patent in suit. With this conclusion we agree, and in view of this we have given no consideration to the United States patents relied on. The device covered by that patent contains a punch, and the punch which it contains has the two distinguishing features of appellant's punch, to wit, a slightly tapering head adapted to enter and fill the ends of a chain-link, and a channel in one of its faces to permit the free movement therein of one arm of an adjoining link. It is operated in the same way, and it is intended to and does accomplish the same result. It is operated in connection with two dies—an upper or hammer die, and a lower or anvil die. The upper surface of the lower or anvil die is provided with a half round groove, corresponding accurately with a chain-link, and from the middle thereof the punch described as cone-shaped, and in the alternative as a wedge, arises, corresponding exactly on its outside, save in front, with the inner curvature of the

148 F.—40

chain-link, and having a groove or channel in front to partly receive the next to the last chain-link. The under surface of the upper die is provided with a groove corresponding to the groove in the lower die, and the part lying within it is hollowed out into a wedge-shaped or conical recess, corresponding to the punch of the lower die. For the reception of the next to the last link between the two dies, recesses are provided. Figures 9 and 10 of the drawings of the patent are respectively a vertical section and an inverted plan view of the upper die. They are as follows:

Figures 11 and 12 thereof are similar views of the lower die. They are as follows:

The result intended to be accomplished by the device covered by the Goerke patent is broader, however, than that intended to be accomplished by the device of the Carroll patent. That intended to be accomplished by the latter, as we have seen, is the bringing of all the links of a chain to a predetermined, fixed, or standard internal dimension. That intended to be accomplished by the former is not only this, but at the same time to weld the links. Appellant's expert testified that it related primarily to the art of welding chain-links. This is hardly correct, but, whether so or not, it had distinctly in view the securing of uniformity in the internal dimensions of chain-links. The device covered by the patent is referred to in the title as a "swaging machine for the production of calibrated chains." The specification opens with a description of devices of the prior art, and refers to them as tools theretofore "known for calibrating and correcting chains which require accurate spacing, i. e., links of exactly equal lengths," and, after stating that these devices were not satisfactory, goes on to say:

"I have therefore invented the chain-dimensioning swaging machine, which is represented in two embodiments in the accompanying drawings."

The description given above of the device is in the second of those two embodiments, and is referred to as a modification of the first one. For our purpose it is not necessary to set forth the first embodiment. But the description of the device in that embodiment shows that, as thus used, it was intended to dimension internally the chain-links. As, for instance, it is said:

"The chain-link which is to be welded, and at the same time dimensioned, is placed upon the punch H of the lower die in a ready to weld and still hot condition; and the upper die is then brought down upon the lower die and the chain-link lying thereon until the two dies lie close on one another. * * *

The link to be welded thereupon not only takes the exact recessed form of the two dies, but also has its length accurately determined."

In the description given of the device in the second embodiment, no mention is made of the result intended to be accomplished by its use therein, but there can be no doubt that it was to dimension internally as well as weld the chain-links.

The fact that the device of the Goerke patent was intended to, and will, accomplish more than the device of the patent in suit, does not prevent its being an anticipation of the latter. It is sufficient that in part it was intended to, and will, accomplish the same result, and that in the same way. Had the Goerke patent been later, it would certainly infringe the patent in suit. Therefore, according to the well-settled rule, it anticipates. It is urged that the welding of the links in the Goerke patent interferes with the dimensioning thereof. The unwelded link must necessarily be placed over the punch at a welding heat, and, by the time the welding and dimensioning is complete, the link will have cooled to such an extent as to contract and grip the punch so that it cannot be removed therefrom without twisting or bending. The patent contains no suggestion as to the method of removing the link after it has been welded and dimensioned. It is claimed that the links thus formed, when removed, will be so irregular in their shrinkage that they will not be of uniform length. This is not so with the device of the patent in suit. The link, before it is placed on the punch, is welded and partially cooled and is readily removed by the stripper plate. But there is no necessity of welding the links at the same time they are dimensioned in using the device of the Goerke patent. It can be used to dimension them alone. The appellee had dies made according to the Goerke patent, and they operated successfully when limited to dimensioning previously welded links. The device of the patent in suit is therefore the device of the Goerke patent, minus any provision for welding the links.

This case therefore comes within the rule, as to anticipation by a foreign patent, laid down by Mr. Justice Clifford, in the case of Seymour v. Osborne, 11 Wall. 555, 20 L. Ed. 33, in these words:

"Patented inventions cannot be superseded by the mere introduction of a foreign publication of the kind, though of prior date, unless the description and drawings contain and exhibit a substantial representation of the patented improvement, in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct, and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent. Mere vague and general representations will not support such a defense, as the knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention, and to carry it into practical use. Whatever may be the particular circumstances under which the publication takes place, the account published, to be of any effect to support such a defense, must be an account of a complete and operative invention capable of being put into practical operation."

But, in order that the Goerke patent may invalidate the patent in suit, it is not sufficient that it antedates that patent. If, notwithstanding such antedating, the patentee, Carroll, invented his device prior to the date of the Goerke patent, then his patent is not invalidated thereby.

The appellant claims that such was the case, and this seems to be its main reliance in upholding the Carroll patent. Some point is made as to the date of the issuance of the Goerke patent. In its title are these words:

"Patent No. 9,592, Class 72, December 27, 1894, 6:45 p. m., Heinrich Goerke, of Gruene, near Isenlohr (Westphalia, Germany.)"

It is contended that the date thus given is the date of the application for the patent, and not the date of its issuance. There is, however, nothing in the record to show that such is not the date of the issuance of the patent—the fair inference is that it is the date of the issuance and not of the application—and the printed and uncertified copy of the patent was introduced in evidence as a patent issued on that date, pursuant to a stipulation that it might be so introduced. The date given must therefore be accepted as the date of the issuance of the patent.

The evidence relied on to make out that the patentee, Carroll, invented his device prior to December 27, 1894, the date of the issuance of the Goerke patent, consists of the testimony of the patentee, Daniel Carroll, his brother, Edward Carroll, James Crooks, and George N. Mettle. The patentee testified that he conceived his device in the fall of 1893; about the month of November; that he made a sketch of it; that not later than November, 1893, he had his brother, Edward, a chain maker, forge him a punch to his sketch; that, his brother not being able to forge the channel as sharp or deep as he wanted, he had James Crooks, a pattern maker, to make him a wooden punch with the channel the proper depth, during the winter of 1893 and 1894; and that in the summer or fall of 1894 he had George N. Mettle, a machinist, to plane a channel in a steel punch which his brother, Edward, had forged for him. It does not appear whether this punch is the same as the one before referred to, but it probably was. The patentee testified that he tried this punch, and it worked successfully. He does not state, however, when he did this. The patentee's brother, Edward Carroll, testified that he made a punch for the patentee, under his direction, probably about September, 1893—not later than September—and that it was rough forged and rather crude. James Crooks testified that he made a wooden model of the appellant's punch; that, at the time, he had no knowledge of the purpose for which it was to be used; and that he was not certain as to the time when he did this, but that it was on or about 1894 or 1895. George N. Mettle testified that in the fall or winter of 1894 he planed or smoothed out the groove in a tool very similar to appellant's punch, which the patentee, Carroll, brought to him, forged to shape, and needing only the groove.

This is the entire evidence bearing on the question as to Carroll having conceived his device prior to the issuance of the Goerke patent. It is to be noted that the witness Crooks locates the making of the model on or about 1894 or 1895, and the witness Mettle locates the making of the groove in the steel punch in the fall or winter of 1894. Neither of these two witnesses, therefore, may be said to give testimony that tends to show that Carroll conceived his device prior to December 27, 1894. The sole evidence, therefore, of conception, prior to that date, is the testimony of the patentee and his brother, and it does not clearly

and certainly appear from their testimony that a successful device was made and operated prior thereto. On the other hand, as weakening, if not overcoming, that testimony, are two circumstances. One is that neither the sketch, wooden model, or steel punch referred to was introduced in evidence. The patentee testified that he could not state positively where the steel punch was at the time he gave his testimony. As to the wooden model, he testified that it was retained in his possession until within the last year, when in moving his household effects it was mislaid, and diligent search had so far failed to find it. The other circumstance is the delay of the patentee in making an application for a patent. He did not make an application therefor until December 10, 1897, over three years after the time when he claims to have invented the device. This delay is unaccounted for. The patentee gives reasons for his not putting his device into practical operation before 1898, but none for his not applying for a patent at an earlier date. In view of the usefulness and value of the device, the delay in applying for a patent seems unreasonable.

The burden was on appellant to establish that he invented his device prior to December 27, 1894, and that beyond a reasonable doubt. It is well settled that, if a defendant seeks to invalidate the patent in suit by showing, by oral testimony, prior invention, the proof must be clear, satisfactory, and beyond a reasonable doubt. The rule is thus stated by Mr. Justice Brown, in the case of Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed Wire Co., 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154:

"We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney, to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer."

This court, in the case of American Roll-Paper Co. v. Weston, 59 Fed. 147, 8 C. C. A. 56, held that the oral testimony as to prior invention was sufficiently cogent to establish it beyond a reasonable doubt, and because of it invalidated the patent in suit.

It is also the law that, if a plaintiff seeks to maintain the patent in suit by showing by oral testimony invention prior to a patent which anticipates it and would otherwise invalidate it, the proof must be of the

same character.   In the case of Thayer v. Hart, Jr. (C. C.) 20 Fed. 693, Judge Coxe said:

"The complainant's patent antedating the defendants', it was incumbent upon them to prove beyond a reasonable doubt that theirs was the prior invention.' This they have done by proof so positive that the complainant's counsel conceded, on the argument, that the date of their invention was January 15, 1877, eleven months prior to the filing of complainant's application. This date being fixed, the burden was transferred to the complainant to satisfy the court by proof as convincing as that required of the defendant that his invention preceded theirs. The rule in such cases is very strict. It is so easy to fabricate or color evidence of prior inventions, and so difficult to contradict it, that proof has been required which does not admit of reasonable doubt. Where interests so vital are at stake, where intervening years have made perfect accuracy well-nigh impossible, where an event not deemed important at the time has been crowded from the memory and obscured by the ever-varying incidents of an active life, it is not difficult to imagine that even an honest man may be led erroneously to persuade himself that the facts accord with his inclination concerning it. The evidence of prior invention is usually entirely within the control of the party asserting it, and so wide is the opportunity for deception, artifice, or mistake that the authorities are almost unanimous in holding that it must be established by proof, clear, positive, and unequivocal. Nothing must be left to speculation or conjecture."

The appellant's oral testimony comes far short of establishing beyond a reasonable doubt that, prior to December 27, 1894, he conceived, constructed, and actually used his device.   It relies on the case of Bliss v. Merrill (C. C.) 33 Fed. 40, as supporting its contention that it has made out prior invention to the degree required.   In that case Judge Coxe said:

"The invention of the second claim is not anticipated by any of the prior patents or exhibits. The English patent to Reynolds describes substantially the same combination, but, though prior to the complainants' patent, it was . not prior to their invention. This patent was sealed July 27, 1875. It was therefore on that day that the invention was made patent to the public. Smith v. Goodyear, 93 U. S. 486, 498, 11 L. Ed. 35. The complainants, if they are to be credited, conceived their invention prior to May 6th of that year. Their testimony in this regard is to some extent corroborated by other witnesses, and by presumptions drawn from collateral facts and circumstances. It is true that this portion of the proof is hardly susceptible of denial. It lies almost wholly within the knowledge of the complainants. A direct attack upon a position founded upon such evidence is, except in rare instances, out of the question. But the difficulties which surround the defendants do not exonerate them from presenting some satisfactory proof, either direct or circumstantial, to traverse the positive assertion of the complainants. Instead of this, there is nothing but the intangible presumption arising from the somewhat peculiar coincidence that the same idea. alike even in minute details, should have occurred to two persons on different continents without one having seen the other's device. But it is entirely clear that the court would not be warranted in rejecting the positive testimony of two respectable and unimpeached witnesses upon a mere suspicion of this character."

It is to be noted that here the testimony of the complainant was "to some extent corroborated by other witnesses, and by presumptions drawn from collateral facts and circumstances."   Here there is no such corroboration.   Crooks' testimony amounts to no more than that he made the wooden model in 1895, and Mettle's to no more than that he made the groove in the steel punch in the winter of 1894.   The date in each instance is too late.   His brother Edward's testimony did not

show he made a punch which could be used before December 27, 1894. And, instead of there being corroborating facts and circumstances, the absence of the sketch, wooden model, and steel punch, and the delay in applying for the patent, are circumstances against the claim of prior invention. Besides, it does not clearly and certainly appear from the testimony of the patentee that any device was put to practical and successful use prior to the date of the Goerke patent.

The decree appealed from is therefore affirmed.