WESTERN ELECTRIC MANUF'G Co. *v.* ODELL and others.

*(District Court, N. D. Illinois.* October 29, 1883.)

1. PATENTS FOR DESIGNS—WANT OF NOVELTY.
    Letters patent issued on the fifteenth of February, 1876, to Charles W. Lewis, for a design for the dial of an annunciator, *held* invalid for want of novelty.
2. SAME—LAW GOVERNING.
    It is now tolerably well settled that design patents stand on as high a plane as utility patents, and require as high a degree of exercise of the inventive or originative faculty. In patentable designs a person cannot be permitted to select an existing form, and simply put it to a new use, any more than he can be permitted to take a patent for a mere double use of a machine; but the selection and adaptation of an existing form may amount to patentable design, as the adaptation of an existing mechanical device may amount to patentable invention.

In Equity.

*Geo. P. Barton,* for complainant.

*James L. High,* for defendant.

BLODGETT, J. This is a bill filed by the complainants, as owners of a patent issued on the fifteenth day of February, 1876, to Charles W. Lewis, for a design for the dial of an annunciator. The defendants demur to the bill, and raise upon the demurrer the question of

the validity of the patent for want of novelty. The scope of the patent is best stated in the language of the patentee himself in his specifications. He claims to have invented a design for the face or dial of an annunciator, of which the following is his description:

"*a* represents the face or dial-plate of the annunciator, and is shown slightly in perspective. *b* represents the figures on the dial-plate, which are intended to be the same as the number of the rooms with which the annunciator is connected. Letters are sometimes used instead of figures. *c* are pointers or indicators which turn to the figures or letters indicating the room from which the call is made. The dial is made a dark color or jet black. The figures, *b*, are made of the color of gold leaf, and the indicators are made of light metal color by preference. But I do not wish to limit my invention by making the figures of gold color, and the indicators light metal color, because the same contrast could be produced by making the indicators gold color and the figures light metal color, which would produce substantially the same appearance in connection with the black ground. I have not represented the different colors in the drawing, but have shown the different parts, so that, when taken in connection with these colors, *my invention will be limited to the contrast of colors, substantially as above specified;* my design consisting of the dark dial-plate, and the bright figures and indicators or pointers of different bright colors, making a contrast of colors, and presenting a very attractive appearance."

I find the law on the subject of design patents so well condensed and stated in a little work lately published by Mr. Simonds, that I cannot do better than read his summary, as stated on page 212:

"For a time it was the practice of the patent-office to grant these design patents for almost any subject-matter presented, and with little or no inquiry as to whether any degree of patentable origination had been exercised. It is now tolerably well settled that design patents stand on as high a plane as utility patents, and require as high a degree of exercise of the inventive or originative faculty. In patentable designs a person cannot be permitted to select an existing form and simply put it to a new use any more than he can be permitted to take a patent for a mere double use of a machine; but the selection and adaptation of an existing form may amount to patentable design, as the adaptation of an existing mechanical device may amount to patentable invention."

In support of this enunciation of the law, Mr. Simonds quotes from *Wooster* v. *Crane*, 2 Fisher, Pat. Cas. 583, as follows:

"The act, although it does not require utility in order to secure the benefit of its provisions, does require that the shape produced shall be the result of industry, effort, genius, or expense, and must also, I think, be held to require that the shape or configuration sought to be secured shall at least be new and original as applied to articles of manufacture."

So, also, in *Northrup* v. *Adams*, 2 Ban. & A. 567, it is said:

"The same general principles of construction extend to both. To entitle a party to the benefit of the act, in either case, there must be originality and the exercise of the inventive faculty. In the one, there must be novelty and utility; in the other, originality and beauty. There must be something akin to genius,—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful

they may be in their new *role*, is not invention.  *  *  *  If a combination of old designs be patentable at all,—of which I have some doubt,—the combination must be such as to produce a new appearance.  If the effect produced be simply the aggregation of familiar designs, it would not be patentable.  For example, if one should paint upon a familiar vase a copy of Stuart's portrait of Washington, it would not be patentable, because both elements of the combination,—the portrait and the vase,—are old; but if 'any new and original impression or ornament' were placed upon the same vase, it would fall within the express language of the section."

In *Gorham Co.* v. *White*, 14 Wall. 511, the supreme court said: "In whatever way produced it is the new thing produced which the patent law regards."

I have read enough to show that the text of Mr. Simonds is fully sustained by the authorities quoted.

The patent in this case is for a mere black dial-plate, upon which the inventor places a gold letter or figure indicating the number of the room, and a white metal pointer.  There is no border or configuration upon the dial, or around it, of a peculiar or ornamental character, nor is there a cornice or binding of any kind, but simply a bald black face, with the gold-colored figures or letters, and the silver or light metal-colored hands or indexes; nothing new or original in the shape or ornamentation of the dial-plate, figures, or pointers is shown or indicated.  The only trouble I have had with the case has been whether the court could import sufficient of what we call common knowledge into the case to say, on demurrer, that this was an old device applied to a new use.  While the case was on argument I drew my watch from my pocket, as I thought the analogy was a fair one, and opening it I found substantially the combination on its face or dial, with merely a change of the colors, that is shown on this patented dial-plate; that is, I found a white face instead of a black one, and black figures indicating the hours, and metal or gold-colored hands, so that there was the same contrast of colors as that on which this inventor claims to base his patent.  There were the three elements, the white face, the black figures, and the gold-colored pointers, making the precise combination for the purpose of contrast which the inventor says is the gist of his invention.  An examination of the decision of the supreme court of the United States in *Brown* v. *Piper*, 91 U. S. 37, satisfies me that the court can from its common knowledge say that the design covered by this patent is only a new use of an old and well-known device.  Certainly there is nothing more completely within the scope of common knowledge than the dial-plate of a watch.  The clock before us in this room presents nearly the contrast the inventor claims for his device, and you can hardly walk the streets without finding in nearly every sign-board the same contrast of colors for the purpose of making an ornamental and attractive sign.  As I have already suggested, if, in connection with this contrast of colors, there had been a border around the dial-plate of a new and original composition in combination with these old parts,

with the old contrast of colors, the patent might be sustained; but there is no such combination here.

The demurrer to the bill, therefore, is sustained, and the bill dismissed for want of equity.