PHŒNIX KNITTING WORKS v. HYGIENIC FLEECED UNDER-
WEAR CO.

(Circuit Court of Appeals, Third Circuit. January 8, 1912.)

No. 77 (1,563).

PATENTS (§ 328*)—INVENTION—DESIGN FOR MUFFLER.

The only feature of the design shown in the Mead patent, No. 39,347, for a design for a neck scarf, which was subject to patent under Rev. St. § 4929, as amended by Act May 9, 1902, c. 783, 32 Stat. 193 (U. S. Comp. St. Supp. 1909, p. 1274), which authorizes the granting of a patent for a "new, original and ornamental" design, was in the configuration and surface ornamentation of the two connected aprons forming the front portion of the scarf; the connecting neck portion being functional only and not visible when the scarf is worn. As so construed, the patent is void for lack of invention and novelty in view of the prior art.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by the Phœnix Knitting Works against the Hygienic Fleeced Underwear Company. Decree (194 Fed. 703) for defendant, and complainant appeals. Affirmed.

Henry N. Paul, Jr., and F. E. Dennett, for appellant.
Hector T. Fenton, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. The appellant, a corporation of the state of Wisconsin, was complainant in the court below, in a bill in equity alleging ownership, by assignment from one Joseph Mead, the patentee, of design patent No. 39,347, dated June 9, 1908, entitled "Design for a Neck Scarf," and charging defendant (the appellee) with infringement thereof by the manufacture and sale of knitted mufflers and neck scarfs bearing said alleged design. The defendant's answer, inter alia, denied the validity of the patent, for want of patentable novelty and by reason of anticipation. Replication was filed by the complainant thereto, and proofs taken on both sides, as set

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

forth in the record now before us. The learned judge of the court below, after a clearly written opinion setting forth the invalidity of the patent for want of invention and patentable novelty, decreed the injunction, pendente lite, theretofore granted, to be dissolved and that the bill be dismissed for want of equity. From this decree, the appeal to this court has been taken.

The Revised Statutes, § 4929, as amended by the act of May 9, 1902, provides as follows:

"Any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law and other due proceedings had, the same as in cases of inventions or discoveries covered by section forty-eight hundred and eighty-six, obtain a patent therefor."

Under the statute, as thus amended, the patent sued on was issued, and its validity must be tested by the spirit and meaning of the legislative language. Whether the plain requirement of the statute has been complied with, that the design should be new, original and *ornamental,* in order to be patentable, must be considered at the threshold of this case, as in every other. No description accompanies the drawing or design which illustrates the invention of the patentee. The specification merely states that Joseph Mead has—

"invented a new, original and ornamental design for neck scarfs, of which the following is a specification reference being had to the accompanying drawing forming part hereof.

"The figure is a plain view of a scarf showing my new design.

"I claim the ornamental design for a neck scarf as shown."

It is apparent from the words "of which the following is a specification," that a detailed description and specification of what was claimed as the invention of the patentee, was intended to be subjoined. No specification or description does follow, and the reference "to the accompanying drawing forming part hereof" is without meaning, as the drawing is the only mode by which the design is suggested or exhibited. It appears, however, from the file wrapper, that a description of the design accompanied the application, as part of the specification, as would be supposed from the language we have quoted, which it immediately followed. The description is:

"The design consists in two ornamental connected aprons, each of which aprons is provided with a scalloped longitudinal edge and two transverse series of stitching at angles to each other, each series of stitches being located between opposing scallops."

Then follows the claim, as in the patent. Upon this specification the Patent Office, acting upon what seems to have been for some time a settled practice, suggested that if a proper drawing was filed, the detailed description would be surplusage and should be canceled. Accordingly, the applicant filed a corrected drawing, as shown in the patent, and removed from his specification the paragraph embodying the descriptive matter.

We do not criticize this practice of the Patent Office, as the novelty and beauty or ornamental character of a design may in most cases be best illustrated by a drawing without the aid of a description. The language of this description is however, here referred to for the bearing it has upon the question raised by the principal contention of the appellee, viz., that the invention embodied in the design was a unitary conception including the configuration of the article of manufacture, as shown in the drawing, and its surface ornamentation.

The configuration shown in the drawing is one that obtained in neckwear long prior to the date of the patent in suit, as is plainly shown in the specifications and drawings of the patent to Erskine, dated January 20, 1891. In the specifications of this patent, the patentee says:

"My invention relates exclusively to what are known as four-in-hand scarfs, in which there is a narrow neck portion, or band, and a wide scarf portion proper, the latter being from two to three times as wide as the former."

The patentee then claims as his invention a new mode of construction of these, at that time, common forms or configurations of neckwear, known as four-in-hand scarfs.

The narrow or neck portion of the scarf, as shown in the illustration of the patent in suit, as well as in the exactly similar configurations of neck scarfs exhibited in the illustration of the Erskine patent, as also in the well known four-in-hand scarfs to which Erskine refers, is purely functional. It connects what Erskine calls the "wide scarf portions proper," and by reason of its narrowness encircles the neck without showing above the collar or coat of the wearer but holds in place the wide ends or "scarf portions proper," which alone are visible when the scarf is in use and display everything which can be called ornamental in the design. Necessarily by these ends alone, thus ornamented, an appeal can be made to the eye of the observer. Upon these connected ends or aprons is displayed the ornamentation described in the rejected specification which we have quoted. That specification, though rejected, is significant in disclosing what the patentee himself thought to be his "new, original and ornamental design." "The design," he says, "consists in two ornamental connected aprons, each of which aprons is provided with," etc. It is clear that the connecting link between the two aprons is merely functional. It is necessary to hold the two broad ends or aprons in their proper place, and when so holding them, this link is invisible. To quote the language of the learned counsel for the appellant, utilitarian functions and structural considerations influence and confuse the mind by their consideration and lead it away from that alone which the design patent should cover.

It is not necessary to pass upon the question how far configuration of an article of manufacture, under other circumsatnces, may constitute, in whole or in part, an ornamental design, within the meaning of the amended statute, but when it is so claimed, surely the configuration must be such as to appeal to the eye of the observer as ornamental. It seems somewhat absurd to claim such configuration as part of an ornamental design which is only visible when the article to which it pertains is not in use. When in use, it is the surface ornamentation alone that appeals to the eye, and the connecting neck band might be supplied in other ways than by a narrowed portion of the material of which the scarf is made. The design must be ornamental when the scarf is on the neck of the wearer, and not be such as to only fulfill its purpose as an ornamental design when it is lying flat upon a table. The general understanding, that the essence of the design covered by the patent consisted of the ornamental appearance exhibited by the transverse series of diagonal stitches displayed on the broad and visible ends of the scarf, with scalloped edges, as described in the rejected specification, is also evidenced by the claim of the appellant, that it is manufacturing under this patent scarfs, differing widely in respect to the enclosing and invisible neck band, but, having the ornamented ends or aprons illustrated in the patent in suit; and such scarfs manufactured by the defendant are produced as evidence of infringement.

In this connection, it should not pass unnoticed that section 4929 of the Revised Statutes (U. S. Comp. St. 1901, p. 3398), before the amendment of May, 1902, spoke of any person who invented a "new and original design for a manufacture," the word "ornamental" being absent. It also included, as patentable, "any new, *useful* and original shape or configuration of any article of manufacture." It is apparent, therefore, that the language of the section, as amended, has restricted the scope of design patents as to shape and configuration, and it is not entirely clear what part, if any, shape and configuration may play as the basis for a design patent. However this may be, we have no difficulty in deciding, apart from the restrictions of the amended Act, that, under the facts peculiar to this case, the design for which a patent was granted is confined to the surface ornamentation in the scarf proper, and does not extend to the configuration, including the narrow neck band, which is never visible when the scarf is in the position for which it was intended.

If, however, our view as to this were different, it would still remain true that the configuration was old in the art of making neckwear many years before the date of the patent in suit, and the only invention that could have been claimed by the patentee, would have been for an ornamental design for such an article of manufacture; that is, a surface ornamentation to be applied to a neck scarf of this old configuration, and if the design of such surface ornamentation had been new and original with the patentee, he would be entitled to the protection of his patent from all appropriation of such design for the use specified in the patent. Unfortunately for the patentee in this case, the precise ornamental design illustrated by the drawing of his

patent and described in the canceled specification accompanying his application, appears in the exhibit of the Harrison muffler, whose public use for some months at least prior to the date of the patent has been, we think, sufficiently proved. The identity of the design of the patent in suit, as applied to the aprons or broad ends of the scarf illustrated in the drawing, with the ornamental design which characterizes the Harrison muffler, is perfectly apparent to the eye in the exhibits of the same side by side, in the record. It is true that the Harrison muffler is a straight muffler, with no narrow middle neck band, and the ornamental design is carried through from end to end, but it is clear that the application of this particular design to the scarf ends of the old four-in-hand blank does not involve patentable invention. As said in a case quoted by Judge Blodgett (Western Elec. Mfg. Co. v. Odell et al. [D. C.] 18 Fed. 321):

"The adaptation of old devices or forms to new purposes, however convenient, useful or beautiful they may be in their new rôle, is not invention. * * * For example, if one should paint upon a familiar vase a copy of Stuart's portrait of Washington, it would not be patentable, because both elements of the combination—the portrait and the vase—are old; but if any new and original impression, or ornament, were placed upon the same vase, it would fall within the express language of the section."

The section alluded to was the section of the Revised Statutes before the amendment of 1902.

The Harrison muffler, cut out in the middle so as to form a neck band, will show precisely the scarf of the drawing, with the two aprons mentioned by the patentee in his canceled description, with identically the same surface ornamentation. We do not think patentable invention can be attributed to the taking of the old ornamental design of the Harrison muffler and applying it to the still older configuration of the four-in-hand scarf.

In view of the thorough and satisfactory discussion of this and other points by the learned judge of the court below, it is unnecessary to further prolong this opinion.

The judgment below is therefore affirmed.