ELECTRIC STORAGE BATTERY CO. v. PHILADELPHIA STORAGE
BATTERY CO.

(District Court, E. D. Pennsylvania.   January 27, 1914.)

No. 741.

1. PATENTS (§ 311*)—SUITS FOR INFRINGEMENT—SPECIAL DEFENSES.

Under Rev. St. § 4920 (U. S. Comp. St. 1901, p. 3394), which provides that the defendant, in a suit for infringement, may, on 30 days' notice, prove certain special defenses under the general issue, or may plead such defenses and give proof thereof under like notice in the answer, such defenses not pleaded, and in the absence of the required notice will not be considered if objection is made, or where there is nothing to indicate that complainant has waived his right to notice.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 541, 542; Dec. Dig. § 311.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—STORAGE BATTERY.

The Dodge patent, No. 1,000,330, for improvements in secondary or storage batteries, consisting of a wood separator, which has previously been treated as described in the specification, to deprive it of such of its constituents as would deleteriously attack lead when subjected to electrolytic action, while leaving those constituents which beneficially affect a negative pole plate, was not anticipated, discloses patentable invention, and is valid, also *held* infringed.

3. PATENTS (§ 62*) — EVIDENCE OF ANTICIPATION — MEASURE OF PROOF REQUIRED.

When an unpatented device, the existence and use of which are proven only by oral testimony, is set up as a complete anticipation of a patent, the proof sustaining it must be clear, satisfactory, and beyond reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. § 62.*]

In Equity.  Suit by the Electric Storage Battery Company against the Philadelphia Storage Battery Company.  On final hearing.  Decree for complainant.

Augustus B. Stoughton, of Philadelphia, Pa., for plaintiff.
Cyrus N. Anderson, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge.  This suit is based upon the alleged infringement by the defendant of a patent to Norman Dodge, assignor to the Electric Storage Battery Company of Philadelphia, No. 1,000,-330, for improvements in secondary or storage batteries.  The application was filed June 9, 1904, and the patent issued August 8, 1911. As set out in the specification:

"The object of the invention is to provide a satisfactory and efficient wood separator and to provide for treating the same in such a way as to make it practically successful in its application to lead storage batteries."

The single claim in the patent calls for:

"A storage battery separator consisting of a sheet of fine grain wood having its natural structure and containing its cellulose and fibrous constituents and constituting a diaphragm impervious to battery sediment and primarily deprived of such of its constituents as would deleteriously attack lead when subjected

to electrolytic action and retaining such of its constituents as beneficially affect a negative pole plate."

Referring in the specification to the term "such of its constituents as would deleteriously attack lead," the specification recites:

"The wood separator which is adapted to constitute a diaphragm impervious to battery sediment is primarily deprived of such of its constituents and wood acids as would in the operation of a battery attack lead. Acetic acid is a type of the wood acids referred to, and if the latter were present they would in the operation of the battery either attack the positive lead pole plate, causing its disintegration, or perhaps by oxidation escape without doing injury, but the only successful course is to primarily deprive the wood of such acids."

The specification then describes two ways for the accomplishment of the result: First, the wood is soaked in a sulphuric acid water solution of, for example, 1.2 specific gravity at normal temperature for two days, more or less; and, second, the wood is soaked in an alkaline solution, such as a 3 per cent. solution of caustic potash, at normal temperature, for about 24 hours. Subsequently the wood is washed as in running water for 48 hours, more or less.

Referring to the language in the claim "such of its constituents as beneficially affect a negative pole plate," the specification recites:

"Although the wood is by the described treatment deprived of certain of its constituents, still it retains others of its constituents, some or all of which beneficially affect the operation of the battery, more particularly in respect to the capacity and life of the negative pole plates."

Referring to the "fine grain wood" mentioned in the claim, the specification mentions bass, birch, cherry, white pine, poplar, and Oregon pine as types of such wood.

The defense set up in the answer is that the patent is invalid for lack of patentable novelty on account of the prior art, for lack of patentable subject-matter, in that the patented separators were known and used in the prior art, and for want of invention. The answer denies infringement.

To establish the defenses set up in the answer, the defendant has introduced evidence consisting of prior patents, printed publications of the complainant, in which it is alleged the subject-matter of the patent is described, evidence of prior knowledge and use by employés of the Helios-Upton Company and its officers and customers, and prior knowledge and use by complainant and its employés and by other corporations.

[1] Before discussing the construction of the patent, two of the defenses discussed in the defendant's brief and at the argument and arising under section 4920, Rev. St. (U. S. Comp. St. 1901, p. 3394), will be considered. They are stated in the defendant's brief as follows:

(1) Invalidity in that, for the purpose of deceiving the public, the description and specification filed by the patentee in the Patent Office was made to contain less than the whole truth relative to his invention or discovery.

(2) Invalidity in that, for the purpose of deceiving the public, the description and specification filed by the patentee in the Patent Office

was made to contain more than is necessary to produce the desired effect.

Section 4920 provides that these defenses, inter alia, may be proved at the trial as special matter, where the defendant has given notice in writing to the plaintiff or his attorney 30 days before trial. The final paragraph of the section provides:

"And the like defenses may be pleaded in any suit in equity for relief against an alleged infringement; and proofs of the same may be given upon like notice in the answer of the defendant, and with the like effect."

The defendant did not plead either defense.

These statutory defenses are based upon the purpose of deceiving the public. No testimony was introduced by the defendant to sustain either defense or to show that there was any purpose on the part of the complainant or patentee of deceiving the public. The purpose of section 4920 is to give the complainant notice of what he is to meet at the trial. If, without such notice, evidence is introduced at the trial or during the taking of testimony to support a statutory defense not pleaded, such evidence will be stricken out and not considered by the court, if proper objection is made. While evidence of matters of special defense not pleaded in the answer will be considered, where relevant, if the evidence relating thereto has not been objected to at the time of the hearing upon the ground of waiver of notice, I think it is not within the purpose or spirit of section 4920 to consider, at final hearing, defenses of this nature without notice, where there is nothing to indicate that the complainant has not waived its right to notice. The consideration of the case will therefore be confined to the defenses set up in the answer upon proper statutory notice, or otherwise raised by the pleadings.

[2] As stated by defendant's witness Paige:

"The problem presented in the patent in suit is to deprive a piece of wood of acetic acid or the constituents of the wood from which acetic acid may be formed."

It will be seen that this statement does not cover the whole problem.

Under the claim of the patent, we find that it consists of a sheet of fine grain wood,

(a) Having its natural structure, and

(b) Containing its cellulose and fibrous constituents, and

(c) Constituting a diaphragm impervious to battery sediment, and

(d) Primarily deprived of such of its constituents as would deleteriously attack lead when subjected to electrolytic action, and

(e) Retaining such of its constituents as beneficially affect a negative pole plate.

It is conceded that wooden separators in secondary batteries are not new. They had been in general use, perforated, or impervious to battery sediment, for a length of time considerably more than two years prior to the filing of the application for the patent. The difficulty in the use of wooden separators consisted principally in the action of the sulphuric acid or electrolyte upon the incrusting substance of the wood, known as lignone, the effect of which is the formation of acetic acid, which attacks the positive plates of the battery and destroys its effi-

ciency. The object of the defendant's patent is to produce a separator impervious to battery sediment (thus avoiding short circuiting), from which such of its constituents (to wit, constituents forming acetic acid) as deleteriously attack the lead are primarily removed (that is, removed prior to the use of the separator in the battery). It appears to be conceded by both parties that, after a portion of the substance producing acetic acid is removed, the retention in the separator of the remaining portion is beneficial to the negative pole plates of the battery. The patentee, accordingly claims a separator primarily treated in such manner as to deprive the wood of such of its constituents as would deleteriously attack lead (in the positive pole plate), retaining, however, such of its constituents as beneficially affect the negative pole plate. It is obvious, from an examination of the specification and from the testimony of the complainant's witnesses, that the treatment of the wood in sulphuric acid, followed by rinsing in water, or by the other method described, treatment in an alkaline solution, as caustic potash or caustic soda, followed by rinsing in water, does have the effect of taking out of the wood a part of the constituents which form acetic acid, and that, unless the wood is so treated, the acetic acid which is formed by the action of the electrolyte fluid deleteriously attacks the positive pole plate by disintegrating the lead. It is undisputed that by the method of treatment described in the specification not all of the constituents which would form acetic acid, which in turn would deleteriously attack lead, are removed from the complainant's separator, and it is established by the evidence that the alleged infringing separator of the defendant also, by the treatment to which it is subjected, is not deprived of all of the constituents which would form acetic acid and which in turn would deleteriously attack lead. The defendant, therefore, contends that the method of treatment to which complainant subjects its separators, although in accordance with the method described in the specification of the patent, except in the fact that caustic soda is the alkaline solvent used instead of caustic potash, is not within the claim of the patent, inasmuch as the claim is based upon the separator being "primarily deprived of such of its constituents as would deleteriously attack lead when subjected to electrolytic action." It is contended by the defendant that, inasmuch as acetic acid is admittedly the derivative of the constituents of the wood which deleteriously attacks lead, unless all of such constituents are removed from the wood primarily (that is to say, before emersion in the electrolyte and use in the battery), the complainant's separator is not within the claim of the patent. In this attempted construction, I think sight is lost of the connection of the words of the claim "when subjected to electrolytic action." There is ample proof in the testimony of both the defendant's and complainant's witnesses that, if the wooden separators before treatment are placed in secondary storage batteries and subjected to electrolytic action, the deleterious effect of the acetic acid derived from the wood is apparent and results in the disintegration of the positive pole plate. When, however, the wooden sheet or separator has been treated as described in the specification and is placed in the electrolyte fluid of the battery, although a part of the constituents of the wood which form

acetic acid are present and are acted upon by the sulphuric acid in the battery, they are apparently broken up into other forms, which are not deleterious to lead when subjected to electrolytic action, and the lead of the positive pole plates is not deleteriously affected by action upon it of such remaining constituents.

It therefore appears that the wooden separator, although it contains a part of the same class of constituents which have been removed, has been deprived of and does not contain such of its constituents as would deleteriously attack lead when subjected to electrolytic action. There is no testimony on the part of either the complainant or the defendant explaining why depriving the wood of only a part of its constituents which would form acetic acid renders the remaining part of those constituents harmless to lead when subjected to electrolytic action. Having proved the fact, it is not incumbent upon the complainant to show why nor how the effect is produced. It has shown by the discovery or invention that it is produced, and what it has shown, I think, clearly brings its separator, treated by the methods described in the specification, within the claim of the patent as being primarily deprived of such of its constituents as would deleteriously attack lead when subjected to electrolytic action. The defendant urges that the patent is invalid, owing to the fact that the final paragraph of the claim of the patent, "and retaining such of its constituents as beneficially affect a negative pole plate," constitutes an amendment which was not contained in the claim as originally filed. As stated in the specification:

"Although the wood is by the described treatment deprived of certain of its constituents, still it retains others of its constituents, some or all of which beneficially affect the operation of the battery, more particularly in respect to the capacity and life of the negative pole plates."

No witness was called on behalf of the complainant who had knowledge or could explain what constituents of the wood, different from those forming acetic acid, remained which exercised the beneficial effect described and claimed. It is claimed by the defendant, and the claim is borne out by inspection of the file wrapper, that the original application for the patent in suit did not describe or even suggest a separator "retaining such of its constituents as beneficially affect a negative pole plate." The insertion of this language in the claim is not, I think, such a change in the application as to invalidate the patent under the rule that an applicant for a patent may not, by amendment, insert in his original application new matter constituting a different invention, and thus, after his application has been long pending, obtain a patent for an invention made by others after the filing of the application. The insertion of the clause in question in the claim does not add to or take anything from the complainant's separator. There is nothing in this language to change the structure nor to alter, in any respect, the treatment of the wooden sheet. It is claimed by the complainant's witnesses and corroborated by those of the defendant that there are ingredients in wood which have a beneficial effect upon the negative pole plate of the battery, increasing its life and capacity. Neither set of witnesses has with certainty explained what the beneficial constituents are, and I think it may be safely stated that they do not know. According to complainant's witnesses, the fact has been demon-

strated, however, that there is such beneficial effect in wood, as the beneficial effect has been obtained by placing in a battery sawdust or shavings of wood, and the conclusion may therefore be drawn that the beneficial action is not caused by the use of the wood as a diaphragm but caused by some unknown chemical constituent. It is claimed by the complainant and conceded by the defendant that such constituents as are beneficial remain in the wood after the treatment, which removes, to the extent obtained by the process, the constituents deleterious to lead, described in the complainant's patent. That wood has these beneficial properties was known prior to the complainant's invention; that they remain in the wood is an incident of the treatment, but the clause does not broaden the effect of the claim. It may well be construed as meaning that, while the wood, by being subjected to the treatment, is primarily deprived of its harmful constituents, it is not thereby deprived of such of its constituents, which were present before the treatment, as beneficially affect a negative pole plate, but that as to such constituents the wood remains the same as before the treatment. This is not a claim of anything new but is merely descriptive of one of the unchanged properties of the wood in respect of its beneficial constituents after the treatment has deprived it of its harmful constituents.

The complainant, having offered his patent in evidence, is, by the well-known rules of law in relation to patents, entitled to the presumptions that the patent is valid; that the device described and claimed is patentable generally; and that the patentee was the original and first inventor of what is described and claimed. The evidence offered to overcome these presumptions will next be considered.

As to the prior patents which disclose inventions for reducing wood to pulp by the use of dilute sulphuric acid or alkali, I think they may be dismissed as being irrelevant in defense for the reason that in none of them was there any use of these processes to adapt the wood so treated to making a separator such as is disclosed by the complainant's patent. That caustic soda, caustic potash, or sulphuric acid would have the effect of disintegrating some of the constituents of the wood was well known, but such process as forming part of a treatment to primarily remove the constituents, which would deleteriously attack lead when subjected to electrolytic action in a storage battery, had not been applied in any of such patents. Moreover, the wood, by the processes in these patents, had lost its natural structure, and there is nothing to identify it with the patent in suit, except that acid or alkali solutions of various degrees of strength are used in connection with various mechanical processes in reducing the wood to pulp. Other patents were offered in evidence relating to storage batteries and describing separators of various sorts of natural wood. None of these patents describe a process of treatment of wood separators nor describe a wood separator having the essential characteristics of that treated by the process described in complainant's patent, and which accord with its claim. As tersely stated by complainant's counsel, the patent in suit does not claim any process, but describes a process consisting in two steps: First, soaking wood separators in a mild acid or alkali solution (of not exceeding 100 degrees Fahrenheit); and, second, washing the

separators so soaked, as with running water, for the purpose of making a wood separator·characterized by the fact that it must be kept wet and by the fact that it is efficient and practical in use and retains all the excellence, chemical, structural, and physical, of wood, but is primarily deprived of constituents which after chemical change, and when subjected to electrolytic action in the use of the battery, would attack and disintegrate the lead of the positive pole plates.

We find, in the patents offered to prove anticipation, natural wood treated in various ways to prevent warping, from which, however, the deleterious constituents have not been extracted; natural wood structurally reduced to a fiber or pulp or an impalpable mass, which therefore do not come within the terms of the patent in that the wood does not retain its natural structure; wood kiln-dried to reduce its internal resistance to the passage through it of the electric current, the wood not being deprived thereby primarily of its harmful constituents; wood boards saturated with concentrated sulphuric acid, which do not anticipate the patent in that the wood is not washed, as in running water, for the purpose of removing the sulphuric acid and the acids formed from the constituents of the wood; Yucca palm wood, boiled to remove starch and non-fibrous portions, which, it appears, is not impervious to battery sediment. It does not appear that any of the patents offered to show prior art produced a separator having the advantages of complainant's separator, nor do they show a separator treated as in the patent in suit. It does appear, by publications of the complainant offered in evidence by the defendant, that efforts were being made more than two years prior to the application for the Dodge patent by the complainant and by its customers under its direction to perfect a process by which a wooden separator could be used without the well-recognized injurious effect upon the lead in the positive pole plate. That these attempts were not successful is apparent from the instructions issued by the complainant and the correspondence offered in evidence. The evidence of the use of complainant's wooden separators by the New York Electric Vehicle Transportation Company and the manufacture by the Helios-Upton Company of wooden separators is not sufficiently clear and definite, in my opinion, to establish the fact that the separators in either instance embodied the invention covered by the claims of the patent in suit. It is apparent from the record that a practical, efficient, and commercially successful wooden separator, which would obviate the "wood trouble" so well known in the art, was being persistently sought after, and that the complainant, among others, was experimenting with the end in view of solving the problem. It is apparent that it was solved by the Dodge patent, and that that patent has been a commercial success.

The defendant claims that, even if the patent is valid, it has not infringed, because in the process described in the patent the wood is soaked in a sulphuric acid water solution or in an alkaline solution, such as a 3 per cent. of caustic potash, and the defendant does not soak its separators in either of the solutions specifically mentioned, but, while it uses an alkaline solution, it uses caustic soda which is not mentioned in the patent. It is apparent from an examination of the specification that caustic potash is mentioned as an example of an al-

kaline solution which may be used. It is shown by the evidence that each of these substances, caustic potash or caustic soda, will extract from the wood the lignone, which is the constituent containing acetic acid. Caustic potash is more expensive than caustic soda, and a stronger solution of it must be used, but caustic soda is included within the term "alkaline solution," and is clearly an equivalent of caustic potash for the purpose for which the alkaline solution is used, so that the mere substitution of one equivalent for another is immaterial, either. in its use by the complainant or by the defendant.

[3] When an unpatented device, the existence and use of which are proven only by oral testimony, is set up as a complete anticipation of a patent, the proof sustaining it must be clear, satisfactory, and beyond a reasonable doubt. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. As the court said in that case:

> "The doctrine was laid down by this court in Coffin v. Ogden, 18 Wall. 120, 124 [21 L. Ed. 821], that 'the burden of proof rests upon him [the defendant], and every reasonable doubt should be resolved against him. If the thing were embryotic or inchoate, if it rested in speculation or experiment, if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress, however near that progress may have approximated to the end in view.' This case was subsequently cited with approval in Cantrell v. Wallick, 117 U. S. 689, 696 [6 Sup. Ct. 970, 29 L. Ed. 1017], and its principle has been repeatedly acted upon in the different circuits. Hitchcock v. Tremaine, 9 Blatchf. 550 [Fed. Cas. No. 6,540]; Parham v. American Button-Hole Machine Co., 4 Fish. 468 [Fed. Cas. No. 10,713]; American Bell Telephone Co. v. People's Telephone Co. [C. C.] 22 Fed. 309."

From the whole record, my conclusion is that the defendant has not sustained the burden of proof to overthrow the presumption of the validity of complainant's patent, and that the patent is good and valid in law, and the defendant has infringed, as alleged in the bill.

A decree for an injunction and accounting may be entered.