INFLEXIBLE CO. v. MEGIBOW.

(District Court, D. New Jersey. August 1, 1918.)

1. PATENTS ⬧328—INFRINGEMENT—EMBROIDERED LACE DESIGN.
Design letters patent No. 50,080, a clover leaf design for embroidered lace, *held*, infringed by defendant's design.

2. PATENTS ⬧252—INFRINGEMENT—IDENTITY OF DESIGN.
Sameness of appearance to the eye of an ordinary observer, not mere difference of lines or slight variation in configuration, is the test that determines identity of design on the question of infringement.

3. PATENTS ⬧43—NOVELTY—DESIGNS.
That three-leaf clover designs were used in making laces for a number of years prior to the advent of plaintiff's design letters patent No. 50,080, a clover leaf design for embroidered laces would not negative novelty, where the earlier patterns were not substantially identical in appearance.

4. PATENTS ⬧328—PATENTABILITY—NEW, ORIGINAL, AND ORNAMENTAL.
In suit charging infringement of design letters patent No. 50,080, a clover leaf design for embroidered laces, *held*, plaintiff's design showed invention, under Rev. St. § 4929 (Comp. St. 1916, § 9475), providing that design must be "new, original, and ornamental," to be patentable.

5. PATENTS ⬧328—PRIOR USE—EVIDENCE.
In suit charging infringement of plaintiff's design letters patent No. 50,080, a clover leaf design for embroidered laces, *held*, plaintiff's patent was prior as to use.

6. PATENTS ⬧312(3)—PRIOR USE—EVIDENCE.
Where, in infringement suit, prior use is sought to be established by oral testimony only, the proof sustaining it must be clear, satisfactory, and beyond a reasonable doubt.

In Equity. Suit by the Inflexible Company against Abraham Megibow. Decree for plaintiff for injunction and accounting.

Erwin & Erwin, of Jersey City, N. J. (Ramsey Hoguet, of New York City, of counsel), for plaintiff.

Bilder & Bilder (David C. Myers, of New York City, of counsel), for defendant.

RELLSTAB, District Judge. The Inflexible Company is the owner, by an assignment from Henry Schwarber, of design letters patent No. 50,080, issued to it December 19, 1916. The bill charges infringement by Abraham Megibow, and seeks permanent injunction, accounting, and damages. Both parties to this suit are manufacturers of laces and embroideries. The defenses are noninfringement, lack of patentable novelty, and prior use.

The patent contains no written description of the design, but the specifications refer to the accompanying drawings. The design thus shown is for embroidered lace, and may be referred to here, as it was by witnesses for both parties, as a clover leaf design.

[1, 2] Does the defendant's design infringe? While there are marked differences between the laces here drawn into question, readily perceived when placed side by side, they are unnoticed when the laces are viewed separate and apart from each other. Under Gorham Mfg. Co. v. White, 14 Wall. (81 U. S.) 511, 20 L. Ed. 731, and Smith

v. Whitman Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606, sameness of appearance to the eye of an ordinary observer, not mere difference of lines or slight variations in configuration, is the test that determines identity of design on the question of infringement. In Ashley v. Weeks-Numan Co. (C. C. A. 2) 220 Fed. 899, 136 C. C. A. 465, with reference to the test to be applied, Circuit Judge Rogers said:

"The appellant states the question of infringement is ordinarily to be determined by a mere inspection of the complainant's and defendant's stands, and that the impression of substantial identity of appearance must exist, if infringement is to be found. In this the appellant is in error. It is not a proper test to place the two inkstands side by side, to determine whether or not there are certain differences. On the contrary, the correct test is whether the ordinary observer, giving such attention as a purchaser usually gives, would purchase the defendant's inkstand, believing it to be that of complainant's; and in applying that test it is necessary to observe that the subject-matter relates to form and configuration, of which no one had ever seen the like prior to the patent in suit." 220 Fed. p. 902, 136 C. C. A. 465.

The defendant's design, thus tested, possesses substantial identity of appearance with that of the plaintiff's.

[3] Does the plaintiff's design lack novelty? The evidence shows that three-leaf clover designs were used in making laces for a number of years prior to the advent of the plaintiff's design. However, this does not in itself negative novelty. Such earlier clover leaf patterns would have to be substantially identical in appearance to that of the plaintiff's, in order to anticipate or forestall it. None of those exhibited or testified to shows such identity.

[4] Does the plaintiff's design show invention? Under the statute (R. S. § 4929 [Comp. St. 1916, §·9475]) the design must be inventively "new, original and ornamental" to be patentable. In Phœnix Knitting Works v. Bradley Knitting Co. (C. C. E. D. Wis.) 181 Fed. 163, it was held:

"A design is patentable, if it presents to the eye of the ordinary observer a different effect from anything that preceded it, and renders the article to which it is applied pleasing, attractive, and popular, even if it is simple, and does not show a wide departure from other designs, or if it is a combination of old forms."

The plaintiff's design fully meets this test. The presumption of invention that arises from the grant of the plaintiff's letters patent is not overcome by the evidence in this case, and there is nothing on the face of the design that would justify this court in declaring that it was not the product of the inventive faculty.

[5] As to prior use: The plaintiff's patent was applied for October 23, 1916. The defendant purchased the infringing design from a Mr. Wolf on July 24th of that year. The latter testified that he designed that pattern about a year previous. He produced a sketchbook containing a "rubbing" of defendant's design, which "rubbing" he said was made in July or August, 1915. The position and appearance of the "rubbing" of defendant's design in Wolf's sketchbook excites the suspicion that it was made at a time subsequent to the entering of the

"rubbings" of other designs that immediately follow. There is nothing in the book itself that shows that the "rubbing" was entered in the order in which it appears, and whether this particular "rubbing" was made at the time alleged depends solely upon the oral testimony of Wolf.

In dealing with that character of evidence, Mr. Justice Brown, in the Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, said:

"In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. * * * Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer." 143 U. S. pp. 284, 285, 12 Sup. Ct. 443, 447 (36 L. Ed. 154).

[6] The doctrine that, where prior use is sought to be established by oral testimony only, "the proof sustaining it must be clear, satisfactory, and beyond a reasonable doubt," has been repeatedly followed in the Supreme and other federal courts. See Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153; Adamson v. Gilliland, 242 U. S. 351, 37 Sup. Ct. 169, 61 L. Ed. 356; American Roll-Paper Co. v. Weston (C. C. A. 6) 59 Fed. 147, 8 C. C. A. 56; Mast, Foos & Co. v. Dempster Mill Mfg. Co. (C. C. A. 8) 82 Fed. 327, 27 C. C. A. 191; H. Mueller Mfg. Co. v. Glauber (C. C. A. 7) 184 Fed. 609, 106 C. C. A. 613; Drum v. Turner (C. C. A. 8) 219 Fed. 189, 135 C. C. A. 74; Peelle Co. v. Rashkin (C. C. A. 2) 222 Fed. 293, 138 C. C. A. 19; Guy v. Stein (C. C. A. 7) 239 Fed. 729, 152 C. C. A. 563; Twentieth Century Machinery Co. v. Loew Mfg. Co. (C. C. A. 6) 243 Fed. 373, 156 C. C. A. 153; Converse v. Matthews (C. C. D. Mass.) 58 Fed. 247; Electric Storage B. Co. v. Philadelphia Storage B. Co. (D. C. E. D. Pa.) 211 Fed. 154; Friedley-Voshardt Co. v. Reliance Metal Spinning Co. (D. C. S. D. N. Y.) 238 Fed. 800.

In the instant case it is to be noted that Wolf, in his affidavit used with others in resisting the granting of a preliminary injunction, which preceded by several weeks the giving of the testimony referred to, made no reference to such sketchbook, or to the fact that he had made the defendant's design in 1915. On the contrary, he then said "that a short time before the 24th of July, 1916," he designed and made a sketch of that design. The testimony of Wolf, which would carry the making of the defendant's design back of July, 1916, on the 24th of which it was sold to the defendant, lacks corroboration, and, while it may be true, does not furnish that character of proof demanded by the cases. The testimony on behalf of the plaintiff as to the time when its design was perfected does not depend upon a single witness, or upon oral testimony alone. It satisfies the test referred to and estab-

lishes that as early as June 5, 1916, such design was in the form patented.

The plaintiff may enter a decree for injunction and accounting.