## J. H. BALMER CO. v. BAY RIDGE SPECIALTY CO., Inc.

### No. 4994.

District Court, D. New Jersey.

Sept. 11, 1937.

Jeffery, Kimball & Eggleston, of New York City (Oscar W. Jeffery, of New York City, of counsel), for plaintiff.

Albert Sperry, of New York City (Walter H. Free and Mark N. Donohue, both of New York City, of counsel), for defendant.

FORMAN, District Judge.

This suit was brought for infringement of design patent No. 78,498, issued on May 14, 1929, for a term of fourteen years, on an application filed March 15, 1929, by John H. Balmer, president of the plaintiff company. It is for a combined tooth brush and tumbler holder. After the design was created, some fifty samples were made in preparation for plaintiff's launching the patented article on the market. Due to economic reasons plaintiff's design was not put on the market. Defendant is alleged to have pre-empted the field with its design infringeing on plaintiff's patent. The defenses are that the defendant's fixture antedated the invention of the patent, that the patent is invalid for lack of invention over designs of the prior art, and that there is no infringement.

The evidence discloses that long before the issuance of the patent in suit there were marketed a number of devices for a combination tooth brush and tumbler supporting fixture, practically identical in structure and precisely identical in function, but slightly different in general appearance. Each consisted of a back plate with slots constituting means for adherence to the wall of the room in which they were to be located. At right angles to this is a protruding plate which is recessed so as to contain a tumbler and on each side of which there are three perforations through which tooth brushes may be inserted.

Some of these in evidence are considered as follows:

In Exhibit D–1 the back plate is rectangular. The protruding plate, likewise rectangular, with rounded outer curves, has a circular recess in its center, to receive the tumbler and the six tooth brush perforations are lozenge shape. The supporting or back plate shows above the upper surface of the protruding plate about a

half an inch and about an inch and a half below the nether surface.

In Exhibit D-2 the recess for the tumbler is square, accompanied on each side by a three-sided ledge through each of which are three lozenge-shaped perforations to admit the tooth brushes. The back plate is flush with the top edge of the protruding plate and extends below its nether surface approximately an inch and three-quarters.

In Exhibit D-3, to be sure, only a tooth brush holder is involved. The means for supporting the tumbler is absent. But it is significant that the back plate is octagonal, the upper part of the octagon showing above the upper surface of the protruding plate and the lower part showing below the nether surface of the same.

In 1923, Balmer, himself, patented a design for such a fixture, characterized by a circular back plate and an elliptical protruding plate in the center of which was a circular recess for the tumbler flanked on each side with three lozenge-shaped perforations (Exhibit D-6).

Just what did Mr. Balmer do to entitle him to patent the design in question? In 1926 and 1927, while in Europe, he says he saw a trend toward the modernistic style of thought, which might spread to bathroom fixtures, so that in July of 1927 his company started to work on the idea, and early in 1928 submitted sketches to the Globe Porcelain Company for the purpose of making dies. As a result of all of this there was produced the patented article. It has a back plate, the lower side of which is flush with the nether surface of the protruding plate. So much of the back plate as shows above the upper surface of the protruding plate has six sides and gives the appearance of the upper part of an octagon. The protruding plate is octagonal in shape. In its center is an octagonal recess to support the tumbler. This is flanked with the usual six perforations, perhaps more rectangular than lozenge in shape, three on each side to hold the tooth brushes. The variations from prior specimens consist in that the back plate does not show beneath the nether surface of the protruding plate. The general design of the back plate, the protruding plate, and the recess for the tumbler is octagonal, rather than circular or square. The front surface of the back plate is slightly indented or paneled, while seven of the outside edges of the protruding plate are also slightly indented with panels.

The foundation of plaintiff's right to claim a patent for this design is found in the following provision of the statute: "Any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof * * * may * * * obtain a patent therefor." 35 U.S.C.A. § 73.

Following are some of the cases cited by the plaintiff to support his contention: In J. R. Wood & Sons, Incorporated v. Abelson's, Incorporated (C.C.A.) 74 F.(2d) 895, plaintiff brought suit alleging infringement of his design patent for a wedding ring, consisting of a double row of diamond chips extending partially around the ring. This design gave the appearance of cut diamonds and sold for less money. Witnesses testified as to its novelty. This case is distinguishable from the case at bar on the ground that a new effect was obtained by the design in that the appearance of cut diamonds was achieved. Obviously, considerable ingenuity is required to produce an effect of that sort. In Inflexible Company v. Mcgibow (D.C.) 251 F. 924, plaintiff charged infringement of his design patent for lace. Defendant interposed the defense of lack of novelty which was overruled. In this case the court found a newness of design that was the product of the inventive faculty (at page 925 of 251 F.) In Graff, Washbourne & Dunn et al. v. Webster et al. (C.C.A.) 195 F. 522, plaintiff brought suit for infringement of his design patent for the border of a dish. There, the court admitted that each element of the patented design, considered separately, was old, but that a new impression was created by the combination and hence the patent was good against the objection that it was invalid. In Untermeyer v. Freund (C.C.) 37 F. 342, plaintiff's design for a watch case was upheld against defendant's contention that no invention was displayed. The design consisted of a central conventional star placed upon a larger star of leaves, both stars being in bas-relief. While this system of design existed in many forms, the court there held that in the particular form in which it was utilized its application was new and novel to watch faces. In General Gaslight Company v. Matchless Manufacturing Company (C.C.) 129 F. 137, 138, plaintiff sued for infringement of his design patent for gas lamps known to the

trade as a cluster of lights. Defendant's defense was want of novelty and infringement. The court stated: "It is not seriously controverted that the design embodies features familiarly known, nearly all of which may in some form be found in pre-existing lamps. * * * The design patent in question is not for an ornament, pure and simple. The shape and configuration of the lamp also permit its classification as a useful article of manufacture. * * * No other similar lamp, which when lighted appeared like an electric light, was then known * * * [and plaintiff's design] insures the illumination of large areas."

The court is cognizant of the test of invention for design patents as cited by Judge Rellstab in Inflexible Company v. Megibow (D.C.) 251 F. 924, 925, wherein he quoted from Phoenix Knitting Works v. Bradley Knitting Company (C.C.) 181 F. 163: "'A design is patentable, if it presents to the eye of the ordinary observer a different effect from anything that preceded it, and renders the article to which it is applied pleasing, attractive, and popular, even if it is simple, and does not show a wide departure from other designs, or if it is a combination of old forms.'"

But in the ring case the design created not only a pleasing impression, but a unique and useful result, in that chip diamonds appeared to be cut diamonds. In the lamp case, the design created a similar impression upon the eye and also illuminated greater areas and gave the impression of an electric light. In the dish, lace, and watch design cases the designers necessarily possessed some genius. And that genius was unique. The characteristics of the individual designers must have been preserved in the design itself, as an artist's personality is written in his product.

As was said in Knapp v. Will & Baumer Company (C.C.A.) 273 F. 380, 382:

"The design law was intended to encourage the decorative arts. It therefore deals with the appearance of the thing designed, rather than with its structure, uses, or functions. But in a design patent, as in a mechanical patent, the subject-matter must be novel, and must have called for an exercise of the inventive faculties. If either of these essentials is absent, the patent cannot be sustained.

"In order that there may be novelty, the thing must not have been known to any one before. Mere novelty of form is insufficient. O'Reilly v. Morse, 15 How. 62, 14 L.Ed. 601. That patent in suit is a square candle. But any one had as much right to make a candle square as to make it round. There are some standard forms and shapes that are known to every one and inherently open to any one to use. The right to make any article round or square is open to all. Novelty cannot be predicated of either. But it is equally plain that to make candles square, instead of round, does not involve any exercise of the inventive faculties, and invention is required as much in design patents as in other kinds of patents. It has been held that design patents stand on as high a plane as utility patents and require as high a degree of exercise of the inventive or original faculty. Perry v. Hoskins (C.C.) 111 F. 1002; Myers v. Sternheim, 97 F. 625, 38 C.C.A. 345; Western Electric Mfg. Co. v. Odell (D.C.) 18 F. 321."

The following language of Judge Chase (Second Circuit) is also pertinent to this case: "If it can fairly be thought that a routine designer of the ordinary knowledge and experience of a good workman at his trade would, in all likelihood, put together such a grouping of old elements just as a part of the usual work of the day whenever the desire so to do was present there is no invention; and that is the situation here." Krem-Ko Company v. R. G. Miller & Sons Incorporated (C.C.A.) 68 F. (2d) 872, 873.

That is likewise the situation in this case. Just what did Mr. Balmer do to entitle him to a patent for his design that a "good workman at his trade" could not conceive out of his ordinary knowledge and experience in grouping old elements as part of the usual work of the day. The idea of the combined tumbler and tooth brush holder was old. The evidence discloses this combination in varying forms. There was an oblong holder with a circular depression for the tumbler and lozenge-shaped perforations for six tooth brushes. There was a square holder, a circular, and other types of design. The plaintiff has now brought forth an application of the cut-corner or octagonal pattern with certain modifications.

The court is not impressed, nor does it see any indications of genius, novelty, or invention in this design. One cannot take round candles and change them to square candles, and have the latter design patented,

Knapp v. Will & Baumer Company (C.C. A.) 273 F. 380, supra.

In College-Inn Food Products Company v. Hurff, 60 F.(2d) 128, 129, plaintiff sued for infringement of his bottle design. Judge Avis of this court held: "Taking into consideration all of the evidence, I am unable to determine that the shortening of the neck, the widening of the surface band, and the adding of steps or collars to the base show invention, or should entitle plaintiff to a patent for what appears to be the almost identical cocktail shaker bottle of the prior art with the additions referred to. It does not evidence a 'new, original, and ornamental design' nor does it rise above mere mechanical skill."

Such variations in form are not to be given the dignity of a patent. "It is not enough to show that the design has not been anticipated, nor is it enough to show that the design is pleasing and ornamental, and presents a substantial difference to the eye from anything which has gone before. In order to involve an exercise of the inventive faculty, a design must be shown to be beyond the range of the ordinary routine designer." Boston Leather Specialty Company v. Vatco Mfg. Company (D.C.) 17 F.Supp. 910.

Mr. Balmer submitted his "rough ideas" to Mr. Jarvis, who prepared the original drawing. He stated that he gave the draftsman also oral instructions and showed him some other models that had been made. In this respect the case is similar to that of Fox v. Spiegel et al. (D.C.) 50 F.(2d) 195, 196, where the plaintiff gave oral instructions to his draftsman, and from these rough ideas a drawing was completed suitable to plaintiff. From this drawing plaintiff patented a bottle design. the court held that the bare verbal expressions of plaintiff did not warrant patentable invention; that the evidence disclosed that his only participation in the evolution of the design was such that at most he was a joint designer. Judge Hincks said in that case:

"The complete absence of expression by the plaintiff of the idea for which he claims invention, other than vague suggestions such as just recited, necessarily indicates that it was not the plaintiff's mind which supplied the necessary correlation of shape, dimension, and ornamentation, through which alone the elusive notions of style can be reduced to finite form in a design.

"Possibly he is sincere in believing himself the creator. It has been said that the true test of a great lyric is that it inspires every reader with the feeling that he could have written it. So perhaps it is with a design. It is human nature to feel at the sight of a design which satisfies it that it is just what we had in mind. Surely one who suggests to a musician that he write music having, say, quick time at the beginning, low tones at the end, and loud chords in the middle, could not claim authorship of the resulting song. Yet compliance with such a suggestion might obviously have an effect of real beauty—or just the reverse. The point is that any aesthetic result from such vague suggestions comes more from the skill of the collaborator than from him who utters the initial suggestion. The latter, as I have suggested above, may indeed be sincere in his pride of creation, but as the old adage goes, it is a wise father that knows his own child.

"And even if the plaintiff contributed some creative element to the design, on the plaintiff's own testimony it appears that Cohen's part in the finished product was such as to make him at least a joint designer, thus invalidating the sole patent to the plaintiff. Ross & Co. v. Wigder (C.C.A.) 290 F. 788."

The design in question lacks any spark that makes it a product of an inventive mind. At best, Mr. Balmer caused a rearrangement to be made of old elements with minor variations which, though giving a pleasing effect does not rise to the stature of invention. Any workman could have done what he did. If this patent is declared valid, someone may come along with an idea for diamond shaped back and protruding plates with diamond shaped depressions, and perforations; star shapes, and other variations. These designs cannot be made the subject of monopoly by patent. Under such circumstances the court is constrained to the conclusion that the patent in suit is invalid and void for lack of patentable invention. In this view it becomes unnecessary to treat the other issues in the cause.

This memorandum is designed to meet the requirements of Equity Rule No. 70½ (28 U.S.C.A. following section 723), providing for the filing of findings of fact and conclusions of law.